# ROGER T. GILL, ADMINISTRATOR, ETC., vs. JOHN STAYLOR.

*When Entries Made by a Decedent in Account Book Are Admissible in Evidence—Recovery for Services Rendered to a Decedent—When Contract is Implied From Acceptance of Services—Limitations— Instructions to the Jury—Plea of Insufficient Assets in Action Against an Administrator—Conceded Prayer—Segregating Facts in Prayer.*

The general rule is that entries made by a party in his own books charging another are not *per se* competent evidence to establish the claim.

In an action against an administrator to recover compensation for services rendered to the intestate, plaintiff testified that he had never been paid for them. A witness for the defendant testified that he seen the decedent make payments at different times for services to the plaintiff and enter the same in a book, and that the witness saw the entries which were made also in the presence of the plaintiff. *Held*, that these entries are admissible in evidence because they are equivalent to entries made by the witness and serve to corroborate his testimony.

When services have been rendered for a decedent by a member of his family, then in an action against his personal representatives to recover compensation for them, the presumption is that such services were gratuitous and the plaintiff must show that the services were performed with a design on his part to charge and an expectation on the part of the deceased to pay for the same. But if the plaintiff was not a member of the decedent's family, then the rendering of the services is *prima facie* evidence of their acceptance and of an obligation to pay what they were worth, if there be no evidence of an express contract to pay a definite sum.

The nephew of a woman's deceased husband is not a member of her family so as to raise the presumption that services rendered by him for her were intended to be gratuitous.

The instructions given to the jury in this case examined and held to state accurately the above-mentioned rule of law relating to recovery for services rendered to a decedent, especially when the instructions are considered together as qualifying one another, which they were obviously designed to do.

In an action against the administrator of a woman to recover compensation for services rendered during a period of thirteen years before her death, when the Statute of Limitations is pleaded, the plaintiff cannot recover for services rendered more that three years before the institu-

tion of the suit, unless the decedent or the defendant promised to pay within three years, or the decedent's promise to pay was made to take effect within three years before the institution of the suit.

Code, Art. 26, secs. 25 and 26, provide that when an administrator is sued he may plead that he has not assets sufficient to discharge the plaintiff's claim "and a trial by jury shall be thereupon had ;" and that if the jury shall find for the plaintiff upon any other issue than that of assets for an amount greater than the assets, the jury shall declare the amount to be paid to the plaintiff, regard being had to the amount of assets in hand, and the debts due from the deceased. In this case the defendant pleaded insufficiency of assets and the evidence sustained the plea, but the jury did not pass upon this question and rendered a verdict for a sum in excess of the assets, on which judgment was entered. The following docket entry was made : "Judgment only to bind assets, by agreement of counsel in open Court." *Held*, that if such agreement had not been made the instructions granted which allowed the plaintiff to recover without regard to the amount of assets in hand would have been erroneous, but this defect is waived by the agreement.

When a party concedes a prayer offered by the other party it becomes the law of the case.

When a prayer of the defendant segregates certain facts and asks an instruction thereon, the conclusion should be limited to the effect of these facts, and not be a conclusion as to the whole right of recovery.

Appeal from a judgment of the Superior Court of Baltimore City (DOBLER, J.) At the trial the following prayers were offered :

*Plaintiff's 1st Prayer.*—If the jury shall find that the plaintiff rendered valuable personal services to and for the benefit of the late Catherine L. Staylor during her lifetime, at her request, and shall further find that said Catherine L. Staylor, in consideration of said services, promised to reward the plaintiff for said services and did not perform said promise, then the jury shall find for the plaintiff against the administrator of said Catherine L. Staylor for the value of said services according to the proof in the case ; provided the jury shall find that said promise was made to take effect within three years prior to the institution of this suit. (*Granted.*)

*Plaintiff's 2nd Prayer.*—The fact that the plaintiff was a nephew of the deceased husband of Catherine L. Staylor, if the jury shall so find, does not make him a member of her

family, and if the jury shall find that, not being a member of her family, the plaintiff rendered useful and valuable personal services to and for the benefit of said Catherine L. Staylor during her lifetime, the fact of rendering such services furnishes *prima facie* evidence of their acceptance by said Catherine L. Staylor, and, in the absence of proof to the contrary of any express contract, raises an obligation to pay what they were worth, and if the jury shall find that such payment has not been made, they shall find for the plaintiff in such a sum provided they shall find that the defendant is the administrator of said Catherine L. Staylor. (*Granted.*)

*Defendant's 1st Prayer.*—That there is no evidence legally sufficient to establish a contract implied or expressed between the plaintiff and the said Catherine L. Staylor, and their verdict must be for the defendant. (*Rejected.*)

*Defendant's 2nd Prayer.*—That there is no legally sufficient evidence in this case to entitle the plaintiff to recover and their verdict must be for the defendant. (*Rejected.*)

*Defendant's 3rd Prayer.*—That the burden of proof is on the plaintiff to prove the value of any services rendered by him to the said Catherine L. Staylor. (*Conceded.*)

*Defendant's 4th Prayer.*—That in order to entitle the plaintiff to recover for any services rendered by him to the said Catherine L. Staylor, they must find that there was a design on the part of the plaintiff at the time of the rendition of the service to charge, and an expectation on the part of the said Catherine L. Staylor to pay for the said services, and if the jury fail to find such facts, then the presumption of law is, that such services were rendered gratuitous. (*Rejected.*)

*Defendant's 5th Prayer.*—That in order to entitle the plaintiff to recover for any services rendered by him to the said Catherine L. Staylor, they must find that there was a design on the part of the plaintiff at the time of the rendition of the service to charge, and an expectation on the part of the said Catherine L. Staylor to pay for said services. (*Conceded.*)

*Defendant's 6th Prayer.*—That if the jury believe from the evidence that the plaintiff worked and labored for the said

Catherine L. Staylor in her lifetime and is entitled to compensation therefor, their verdict should be for such sum of money as they may find from the evidence such services were reasonably worth, provided they further find from the evidence such services were rendered with a design on the part of the plaintiff to charge and an expectation on the part of the said Catherine L. Staylor to pay for the same.

*Defendant's 7th Prayer.*—That if the jury believe from the evidence that the plaintiff worked and labored for the said Catherine L. Staylor in her lifetime and is entitled to compensation therefor, their verdict should be for such sum of money as they may find from the evidence such services were reasonably worth for a period not exceeding three years prior to the death of the said Catherine L. Staylor, provided they further find from the evidence such services were rendered with a design upon the part of the plaintiff to charge and an expectation on the part of the said Catherine L. Staylor to pay for the same.

*Defendant's 8th Prayer.*—That if they believe from the evidence that some portion of the plaintiff's claim accrued and was due more than three years before the institution of this suit, then the plaintiff cannot recover for such portion under the pleadings in this cause, unless they shall further find that the defendant or his decedent promised to pay the same within three years before the bringing of this suit. (*Conceded.*)

*Defendant's 9th Prayer.*—That if they believe from the evidence that the plaintiff rendered the services as testified to, with the expectation of compensation by will from the said Catherine L. Staylor, then their verdict must be for the defendant. (*Rejected.*)

*Defendant's 10th Prayer.*—That if they believe from the evidence that the said Catherine L. Staylor employed the plaintiff and agreed to pay him the sum of three dollars per week and his board and clothes, then the plaintiff is not entitled to recover in this action, unless they further find that the alleged services were not part of the duties imposed on him by such employment. (*Conceded.*)

*Defendant's 11th Prayer.*—That although the jury believe from the evidence that the plaintiff rendered services to the defendant's decedent, other than those within the scope of the duties for which he was employed, the plaintiff is not entitled to recover in this action.

*Defendant's 12th Prayer.*—Although the jury believe from the evidence that the plaintiff rendered services to the defendant's decedent, other than those within the scope of the duties for which he was employed, the plaintiff is not entitled to recover therefor in this action, unless they further find that at the time the plaintiff rendered such services, it was expressly agreed between the plaintiff and the defendant's decedent that he, the plaintiff, should be paid for such extra services. (*Conceded.*)

*Defendant's 13th Prayer.*—That when the relation of master and servant is established by contract, and during the existence of said relation the plaintiff (the servant), voluntarily performed services for the defendant's decedent (master) with no agreement or understanding that he should be paid for said extra services, and the plaintiff gave the defendant's decedent no notice of any intention to claim compensation for such services, but settled with her strictly under his original contract, the law will not imply a contract for said extra services. (*Conceded.*)

*Defendant's 14th Prayer.*—That if the plaintiff was under a regular weekly salary during the time the services now claimed for were performed, that it is a presumption of law that all services he performed during said period, whether ordinary or extraordinary were paid for by said salary, and to overcome this presumption, the plaintiff must show an expressed agreement for extra pay, otherwise he cannot recover in this action. (*Conceded.*)

*Defendant's 15th Prayer.*—That the mere approval and passage of an account by the Orphans' Court does not establish its correctness and does not bind the defendant to pay. (*Conceded.*)

*Defendant's 16th Prayer.*—If the jury believe from the evi-

dence that the deceased Catherine L. Staylor and the plaintiff composed one family and were living together as a family, and that the services rendered by the plaintiff were owing to his relation and connection with the deceased Catherine L. Staylor, without any promise on the part of the deceased Catherine L. Staylor of remuneration, the plaintiff is not entitled to recover. (*Rejected.*)

And the Court granted the first and second prayers of the plaintiff and rejected the first, second, fourth, ninth and sixteenth prayers of the defendant; and the third, fifth, eighth, tenth, twelfth, thirteenth, fourteenth and fifteenth prayers of the defendant were conceded by the plaintiff; and the Court modified the defendant's sixth prayer so as to read as follows:

*Defendant's 6th Prayer Modified.*—The defendant prays the Court to instruct the jury that if the jury believe from the evidence that the plaintiff worked and labored for the said Catherine L. Staylor in her life-time, and is entitled to compensation therefor, their verdict should be for such sum of money as they may find from the evidence to have been the contract price for such services or what such services were reasonably worth, if they do not find any expressed contract price, less than sums of money they find were paid by the said Catherine L. Staylor to the plaintiff on account of such services.

And the Court modified the defendant's seventh prayer, so that the same reads as follows:

*Defendant's 7th Prayer Modified.*—The defendant prays the Court to instruct the jury; that if the jury believe from the evidence that the plaintiff worked and labored for the said Catherine L. Staylor in her life-time, and is entitled to compensation therefor, their verdict must be for such sum of money as they may find from the evidence to have been the contract price for such services, or what such services were reasonably worth, if they do not find any expressed contract price for a period not exceeding three years prior to the death of the said Catherine L. Staylor, provided they further find from the evidence, the said services were rendered with design on the part· of the plaintiff to charge and an expectation on the part of the

said Catherine L. Staylor to pay for the same; unless they
further find that Catherine L. Staylor expressed a promise to
the plaintiff to compensate him for such services or that he
would be paid therefor at her death.                    ·  ·

The cause was argued before McSHERRY, C. J., FOWLER,
BRISCOE, PEARCE, SCHMUCKER and JONES, JJ.

*Wm. S. Bryan, Jr.*, (with whom was *R. Lee Gill* on the
brief), for the appellant.                                ·
The entries in the account book were admissible to corrob-
orate the witness Lutz.  *Greenleaf on Evidence*, sec. 116; *Cur-
tis* v. *Bradley*, 28 L. R. A. 143; *State* v. *Brady*, 36 L. R. A.
696; *Owens* v. *State*, 67 Md. 314; *Billingslea* v. *Smith*, 77
Md. 515; *Stallings* v. *Gottschalk*, 77 Md. 429.
The plaintiff having sworn that he was never paid his wages,
and the witness Lutz having sworn that he had seen him paid,
the testimony of each was an *impeachment* of the testimony of
the other. (*McAleer* v. *Horsey*, 35 Md. 463.)  Under such
circumstances it is well settled in Maryland that·matters are,
*by way of corroboration*, admissible in evidence, which would
not otherwise be received as original evidence.  *McAleer* v.
*Horsey*, 35 Md. 462–3–4; *Washington Fire Ins. Co.* v. *Davi-
son*, 30 Md. 105; *Cooke* v. *Curtis*, 6 H. & J. 93.  In many
jurisdictions divorces are not granted on the testimony of the
parties unless corroborated.  The Courts in such cases have
always been liberal in admitting any testimony which would
tend to throw any light on the *probability* of the testimony of
the party to the suit being true or false.  For example, a
plaintiff testified that her husband committed adultery with a
certain woman.  Proof that this woman was of a doubtful
character, and that she and the husband had lived alone in the
same house, was held to be not only admissible in evidence,
but when neither the husband nor the woman denied the
adultery, as also sufficient corroboration to satisfy the statute.
*Evans* v. *Evans*. 41 Cal. 103.
The fifth prayer requires that the jury should find, as a con-

dition of recovery, that there was a design on the part of the plaintiff to charge, and an expectation on the part of Mrs. Staylor to pay for his services. In opposition to this the plaintiff's second prayer asserts that "the fact of rendering such services *furnishes prima facie evidence* of their acceptance by Mrs. Staylor, and in the absence of proof to the contrary of any express contract, raises an obligation to pay what they are worth." It throws upon the defendant the *onus* of proving an express contract to the contrary, instead of requiring the plaintiff to prove *a design* on the part of the plaintiff, and *an expectation* on the part of Mrs. Staylor. The second prayer of the plaintiff is also inconsistent with the eighth prayer of defendant, which was conceded. This eighth prayer exempts from the recovery the portion of the demand which was barred by limitations; on the other hand, the plaintiff's second prayer authorizes a verdict for the entire amount which they were worth *without diminution*. It is settled whether correct or incorrect a conceded prayer is "*the law of the case*," and that it is binding both upon the party conceding it and upon the Court. *Sittig* v. *Birkenstock*, 35 Md. 278; *Rosenstock* v. *Ortwine*, 46 Md. 393–4.

Both of plaintiff's prayers are obnoxious to another fatal objection. The eighth prayer of defendant called the Court's attention directly to the pleadings; and the plaintiff's first prayer did the same thing by referring to the plea of limitations. Yet both of plaintiff's prayers utterly disregarded the replication to the fourth plea. That replication is: "And as to the fourth plea of the defendant, plaintiff says that there are sufficient assets belonging to said estate to pay the debts of the plaintiff, due regard being had to legal debts still due and owing by said defendant's decedent."

By Article 26, sec. 26 of the Code, on an issue of this kind, the jury are *bound* to find the amount of assets, and if this is less than the debt or demand of the plaintiff, they are "to declare the amount of the debt or demand, and also the sum to be paid by the defendant to the plaintiff, regard being had to the amount of the assets in hand and the debts due to

.the deceased." Under the prayers the jury found a verdict for a greater sum than the amount of assets. We have seen that in disregard of the proof of the amount of assets and of the provisions of sec. 26, Article 26 of the Code, the jury were instructed that upon the finding of certain facts they should find a verdict for the plaintiff *for the value of his services.*

*Charles Morris Howard* (with whom were *Francis P. Curtis* and *Thomas E. Brady* on the brief), for the appellee.

The second and third bills of exceptions are based upon the refusal of the Court to allow a so-called book of accounts to be produced in evidence. The authorities in this country and in England as to what kinds of entries are admissible are not entirely uniform. Since the leading case of *Price* v. *Lord Torrington,* 1 Salk. 285, there have been numerous decisions as to the admissibility of entries made by *third persons* in the course of business. The common law rule is, that the entry must be made in the course of business, and by a clerk or book-keeper, he being a person who has no interest in the mattter.

In *Cooper* v. *Marsden,* 1 Espinasse, 1, it was held by LORD KENYON that the entries in the books of bankers or persons keeping books respecting their trade or business, could only be proved by the clerks who had made the entries, inasmuch as they might give some material evidence independent of the mere entry in the books from having some acquaintance with the dealings upon which the entries were founded. In *Price* v. *Lord Torrington* the entry was made by the plaintiff's drayman in a book kept for that purpose, to which every night the drayman set his name. In *Maine* v. *Harper,* 4 Allen, 115, it was held that the party's cash book of entries of money paid and received is not admissible as evidence of a particular payment. In *Inslee* v. *Ex'r of Prall,* 23 N. J. L. 463, it was held that books of account could not be received to prove the payment or lending of money. Whatever may be the authorities elsewhere, it is well settled in Maryland that entries made by the parties themselves in their own interest are not admissible.

1 *Greenleaf's Evidence,* sec. 118, note 1; *Owings* v. *Low,* 5 G. & J. 142; *Clarke* v. *Magruder,* 2 H. & J. 78; *Reynolds* v. *Manning,* 15 Md. 510; *Romer* v. *Jaecksch,* 39 Md. 585; *Stallings* v. *Gottschalk,* 77 Md. 429; *Heiskell* v. *Rollins,* 82 Md. 14.

The book offered here had none of the characteristics of an account book. There is nothing to show that the money was paid to John Staylor or by whom. The entries are entirely consistent with the theory of the appellee that Mrs. Staylor did not pay the plaintiff his wages, but saved them for him. Such a book as that offered here would not be admitted by any Court.

The defendant offered sixteen prayers. It would be strange if such a number were required in a case presenting comparatively simple facts. The endless multiplication of prayers has frequently been condemned by this Court as likely to lead to confusion and embarrassment. *Poe's Pleading and Practice,* 2d ed., vol. 2, 331; *B. & O. R. R.* v. *Resley,* 14 Md. 442; *Brown* v. *Ward,* 53 Md. 390; *Green Ridge Co.* v. *Brinkman,* 64 Md. 61; *B. & P. Tel. Co.* v. *Grimes,* 71 Md. 582; *Met. Life Ins. Co.* v. *Dempsey,* 72 Md. 296.

The plaintiff's two prayers, which should be read together, fully submitted all the questions of fact to the jury. The evidence is clear that the plaintiff was employed under a definite contract at five dollars a week and board. After his employment began the payment of his wages was held back by Mrs. Staylor under a promise that he would get it at her death. There was a substituted contract so far as the time of payment is concerned. A contract to make a will in favor of a certain person, based upon valuable consideration, is valid and can be specifically enforced. *Walpole* v. *Lord Orford.* 3 Ves. 402; *Baxter* v. *Gray,* 42 Eng. C. L. 402; *Mundorf* v. *Kilburn,* 4 Md. 459; *Whitridge* v. *Parkhurst,* 20 Md. 62; *Brendel* v. *Stroebel,* 25 Md. 401; *Semmes* v. *Worthington,* 38 Md. 298; *Wilks* v. *Burns,* 60 Md. 70; *Hamilton, Adr. of Thirston,* v. *Thirston,* *ante* p. 213.

Apart from any positive proof, where services such as were rendered here are rendered by a person not a member of the

family, the mere fact of rendering services useful to the defendant would furnish *prima facie* evidence of their acceptance, and in the absence of some proof to the contrary would raise an obligation to pay what they were worth, there being no proof of special value. *Bantz* v. *Bantz*, 52 Md. 693; *Bixler* v. *Sellman*, 77 Md. 496; *Wallace* v. *Schaub*, 81 Md. 598.

This instruction was embodied in the plaintiff's second prayer, which simply related to the *prima facie* presumption arising from the want of relationship of the parties. That a nephew by marriage is not a " member of the family " is clear. *Hart* v. *Goldsmith*, 51 Conn. 479 ; *Galligar* v. *Payne*, 34 La. An. 1057 ; *Peeler* v. *Peeler*, 68 Miss. 141 ; *Norwegian Old People's Home Soc.* v. *Wilson*, 176 Ill. 94 ; *Matter of Noah*, 73 Cal. 590 ; *Landgrove* v. *Pawlett*, 20 Vt. 312 ; *In re McLacy*, L. R., 20 Eq. 186 ; *Lathrop* v. *Sold. Loan Ass'n*, 45 Ga. 483 ; *Kidd* v. *Lester*, 46 Ga. 231 ; *Frets* v. *Brown*, 4 Mass. 675.

The definition of the word " family " differs according to the context. In its broadest sense, the word " family " includes all persons who collectively live together in a house or under one head. *Peeler* v. *Peeler*, 68 Miss. 141. This would include servants. This is manifestly not the meaning of the word under the doctrine of *Bixler* v. *Sellman*. If it were we should be led to the absurd result that when a servant is employed his services are presumed to be gratuitous. It is submitted that the true test of the word " family " should turn upon the right to services and duty to support. If the relationship does not involve this, there is no presumption that the services are gratuitous.

The plaintiff's second prayer merely dealt with the *prima facie* presumption arising from the rendition of services under the relationship of the parties. As the evidence of the defendant himself showed that there was an express contract, the consideration of an implied contract became superfluous, and the rulings contained in the plaintiff's second prayer could not affect the defendant.

The question of limitations was fully presented to the jury in the first prayer of the plaintiff, the eighth prayer of the de-

fendant and the seventh prayer of the defendant as modified by the Court.     There was no need to refer to this in the plaintiff's second prayer.     1st.  Because that prayer dealt with an implied contract and not an express one.     2nd.  Because the second prayer is to be taken in connection with the plaintiff's first and the defendant's seventh and eighth prayers.     *Rosenthal* v. *Ortwine*, 46 Md. 400 ;  *P. W. & B. R. R.* v. *Larkin*, 47 Md. 155.     3rd.  Because according to both the plaintiff's and the defendant's evidence the case turned upon an express and not an implied contract.     There is abundant evidence that within three years prior to bringing the suit, and also on many occasions years previously thereto, Mrs. Staylor stated in John Staylor's presence that he would be paid when she died.

PEARCE, J., delivered the opinion of the Court.

This is an action of *assumpsit* by John Staylor against Roger T. Gill, administrator of Catherine Staylor, to recover for thirteen years of continuous service rendered her.     Issues were joined upon pleas that neither defendant nor his decedent were ever indebted as alleged, nor ever promised as alleged ; that the action did not accrue within three years before suit brought ; and that the assets of the estate are not sufficient to pay all the decedent's debts, regard being had to the alleged debt of the plaintiff.     Mrs. Staylor's husband was a butcher, and the plaintiff was his nephew, and learned his trade with him.  After his death in November, 1885, Mrs. Staylor continued the business which was carried on for her by the plaintiff and her brother, Albert W. Lutz.     There was no dispute as to the rendering of any of the services alleged, the only questions being as to the compensation, and whether full payment had been made.     The plaintiff was permitted to testify on his own offer without objection, and he swore that he worked for Mrs. Staylor uninterruptedly from July 5th, 1886, to October 14th, 1899, during all of which period, he received his board from her but no money whatever for his services, and it is a singular feature of the case that he was absolutely silent as to any agreement or understanding, express or implied, for any com-

pensation for his services.   He testified, however, that in the interval between his uncle's death and his going to work for Mrs. Staylor that he rendered similar services to one Courtney, and received from him his board and five dollars per week ; and one Krout, who worked there with him, testified that Staylor showed him two letters from Mrs. Staylor asking him to return and work for her and promising him the same wages he received from Courtney, which Krout says were fair wages for the work.   Maggie Donovan, who lived with Mrs. Staylor from 1886 to 1890, testified that she heard Mrs. Staylor tell John he was to get $5.00 a week, and that she also told John in her presence, that Maggie and John, at her death, would get what belonged to her for working for her and attending to her.   Mrs. Edwards and her sister, cousins of Mrs. Staylor's husband, testified that they heard her say in 1898, that she had willed everything to John, but that they knew nothing about any wages he was to receive.   Mrs. Lafferty, who was a neighbor of hers for many years, heard her say that at her death everything she had would go to John and Maggie.   John McKewen heard her say on several occasions, that when she died, the business and the house would be John's, and that she was saving his money for him.   These, and several other witnesses who testified to plaintiff's services and their reasonable value, without any knowledge of the terms on which he was employed, were produced by the plaintiff, and at the close of the plaintiff's testimony, the defendant offered two prayers : One, that there was no legally sufficient evidence to establish a contract, implied or expressed, between the plaintiff and Mrs. Staylor, and one, that there was no legally sufficient evidence to entitle the plaintiff to recover, both of which were rejected, and their rejection is the ground of the first exception.   Neither in the brief nor in the oral argument was this exception alluded to, and we may, therefore, presume it was abandoned, but it is in any event obvious from the recital of the testimony we have given that there was no error in this ruling.

The fourth exception was taken to the asking and answer-

ing of a question permitted by the Court as to whether the Knights of Pythias, of which plaintiff was a member, was not virtually an insurance society. The relevancy of such testimony is not apparent, nor is the injurious consequence of its exclusion apparent, assuming it to be admissible upon any theory of the case, and we shall not pause therefore to consider it.

The second and third exceptions were taken to the refusal to permit the defendant to read in evidence from a memorandum book, entries by Mrs. Staylor of payments made to the plaintiff on account of his wages, which offer was twice made and refused. These exceptions will be considered together. Lutz testified for the defendant that Mrs. Staylor was his sister, and that he was employed by her in her business from 1887 till her death in 1899; that she agreed to pay and did pay him five dollars a week without board; that the plaintiff was to receive three dollars per week with board; that he knew his sister's handwriting anywhere; that he and his sister settled up every week of their lives, and plaintiff was present at these settlements. Lutz was then shown a memorandum book in lead pencil containing entries of regular weekly payments of three dollars each, alleged to have been made by Mrs. Staylor to the plaintiff from June 1st, 1897, to July 5th, 1899, and Lutz testified these entries were in the handwriting of his sister. There was no heading of these entries with the name of plaintiff, nor anything on the face of the writing to show to whom the payments were made. At this point in the testimony of Lutz, the offer was first made and refused, and as he had in no manner connected the plaintiff with these entries by his testimony, we think, the offer was properly refused at that time. Continuing his testimony, however, Lutz said, "Every Tuesday was our settling day. John Staylor would be at my right side, and Mrs. Staylor would be sitting down just settling up the business for the week. He (John), never missed a time getting paid to my knowledge. She always paid him with three dollars, and he would be sitting there and he would take it; all was dotted down on that book at the time we settled;

every week Johnny got three dollars and his board. I was in contact with John Staylor every day, and every hour in the day. He never said a word to me about any charges he intended to make. The last time I saw a payment by Mrs. Staylor to John, was three weeks before she died." The defendant then produced five witnesses whose testimony tended to prove that John Staylor had agreed to work for Mrs. Staylor for three dollars a week and board, and some of these testified they had seen these wages paid at various times, and entered by Mrs. Staylor in a book, and the defendant then renewed his offer to read these entries to the jury, which was again refused. It is of course clear, both upon principle and authority that entries made by a party himself charging another, are not admissible as evidence *per se*. Such entries stand upon a different footing from those made by a clerk or other person in the ordinary course of busines and contemporaneously with the transaction, and in *Romer* v. *Jaecksch*, 39 Md. 589, it was observed that though Mr. Greeenleaf says in his work on *Evidence*, vol. 1, sec. 118, that in the United States this principle has been carried farther and extended to entries made by the party himself in his shop books, yet this extension of the doctrine has not been sactioned in Maryland, where the rule of the common law in this respect has not been departed from. But we think the evidence was admissible on a principle of a distinct character. Lutz had testified that he had seen the weekly payments of three dollars for wages made to plaintiff by Mrs. Staylor, and entered at the time in a book in her handwriting. If a book containing such entries in her handwriting can be produced, it is certainly strong corroboration of Lutz' testimony, and the appellant contends these entries are admissible for that purpose.

In *Digby* v. *Stedman*, 1 Espinasse, 328, plaintiff had delivered to defendants a watch for repairs, and while in their hands he sold it and gave the purchaser an order for its delivery. In an action of trover, defendants claimed they had delivered it pursuant to plaintiff's order, but the purchaser swore he had never received it. It was proved by defendants' shopman that

he had himself seen the watch delivered to the purchaser, and the defendants' shop-books were then offered, in which was an entry of such delivery, in the handwriting of one of the defendants. On objection, LORD KENYON said : "The entry in the book was brought to corroborate the testimony of the witness, who had himself seen the delivery ; that the entry should regularly be in the handwriting of the witness, but where the entry was made in the handwriting of another, and the witness saw it soon after it was made, and the entry had corresponded with what he had himself then observed, such was tantamount to an entry made by himself, and was therefore admissible."

In *Cooke* v. *Curtis,* 6 H. & J. 93, the rule was laid down that where the credibility of a witness is attacked by the opposite party his prior declarations may be given in evidence *to show his consistency.* In *Washington Fire Ins. Co.* v. *Davison,* 30 Md. 104 and 105, this rule was approved, the Court, saying "we are clearly of opinion the testimony was admissible to *corroborate Davison;* whose credibility had thus been impeached by defendant's witnesses. The ruling falls directly within the decision in *Cooke* v. *Curtis, supra,* and the rule of evidence of which that case is an illustration." Here plaintiff's denial that he had ever received a cent for his wages was a direct impeachment of the testimony of Lutz that he had seen them regularly paid and Mrs. Staylor's entries being under the ruling in *Digby* v. *Stedman, supra,* tantamount to entries by Lutz himself, are *his* prior declarations of such payment. An illustration of the limitation upon the application of this rule is found in *Stocksdale* v. *Cullison,* 35 Md. 325. There upon issues whether the signatures of the alleged testator and subscribing witnesses (all of whom were dead) were forgeries, the caveators gave evidence tending to implicate George Stocksdale, one of the caveatees, in the alleged forgeries, and the caveatees after offering evidence of the genuineness of these signatures, offered to prove that the day before the funeral of the deceased, the witness inquired of George Stocksdale whether there was a will of his father's in existence, and

that he replied he believed his father died intestate ; the con-
tention being that this answer was pertinent and proper to
repel the inference of his agency in procuring the alleged for-
geries, and reliance was placed upon the two cases above
cited.    But the Court held otherwise, because Stocksdale was
not examined as a witness as he might have been, and there
was therefore no impeachment of his testimony given under
oath, and it was very properly added as an independent reason
for the ruling in that particular case, that if his declarations
had been admitted, they would have furnished no rational
ground for repelling the imputations against him, because such
declarations would be perfectly consistent with the conceal-
ment which always accompanies fraud.

In the leading case of *McAleer* v. *Horsey*, 35 Md. 462, this
question was very fully and thoroughly considered, and the
cases of *Cooke* v. *Curtis*, and *Wash. Ins. Co.* v. *Davison*, were
approved in an able opinion by JUDGE MILLER, in the course
of which he said : "Where two parties contradict each other
under oath, respecting a matter occurring between themselves
only, and about which they have equal means of knowledge
and equal reason for accurate recollection, it is in vain to ar-
gue that one of them has not sworn falsely.    The defendant's
testimony, therefore, went to a substantial impeachment of the
credibility of the plaintiff.    *   *   *   *   *    The fact that it
went to the jury, opened the way for corroboration, notwith-
standing the disclaimer, and brings the case directly within
that of *Cooke* v. *Curtis*, 6 H. & J. 93, which was followed in
*Wash. Fire Ins. Co.* v. *Davison*, 30 Md. 91.   The first of these
cases has remained unquestioned by the Courts of this State
for nearly fifty years, and whilst it would not be expedient or
safe to extend or enlarge its application, yet it has been the
uninterrupted practice of all Courts to receive their own de-
cisions as of binding force, and on general principles of judi-
cial propriety, the solemn adjudications of an appellate Court
of last resort, 'ought to be approached with caution, and per-
haps they should never be disturbed, except to settle some
great rule of property the public interest requires to be re-

viewed.' *Hammond* v. *Ridgely*, 5 H. & J. 278. No such considerations are here involved, and that case is therefore a binding authority on this Court, no matter what may be the law decided by Courts of. other States, or elsewhere, and *whilst* its doctrine is not to be expanded, there ought to be no hesitation in applying to a case falling directly within the *rule* and *principle* it establishes."

Thirty years have passed since that decision was rendered, and during this period it has been repeatedly cited and approved. In *Bloomer* v. *State*, 48 Md. 537, it is said : "The admissibility of this species of evidence has been very deliberately sanctioned by this Court in the cases cited by the State in 30 and 35 Md., and again in the case of *Maitland* v. *Citizen's Bank*, 40 Md. 540." In two later cases the reasons which lie at the foundation of this rule are stated with equal clearness and condensation. In *Owens* v. *State*, 67 Md. 315, the Court, speaking of testimony of this character, says: "It is certainly true that to exclude such note or memorandum, *when shown to have been honestly made*, would be to reject the best, and frequently, the only means of arriving at truth." And in *City Pass. Ry. Co.* v. *Knee*, 83 Md. 81, the Court, referring to ·the testimony admitted in the 30th Md. case, says: "It furnished both a test of his (the witness) recollection and his integrity." Sec. 2 of Art. 35 of the Code of Public General Laws provides "that it shall not be competent for *any party to the cause*, who has been examined therein as a witness, to corroborate his testimony when impeached, by proof of his own declarations or· statements made to third persons out of the presence or hearing of the adverse party." The entries made by Mrs. Staylor in this case as testified to by Lutz, we have said, under the authority of *Digby* v. *Stedman, supra*, are equivalent to entries made by himself, and to his own declarations, but they were made in the presence of· Staylor, and therefore would not seem to be excluded even if Lutz were a party to the cause. He is not a party however, and can therefore in no event be brought within the prohibition of this statute.

We are therefore clearly of opinion that there was error in refusing to allow the entries of Mrs. Staylor to be read in evidence upon their second offer.

At the close of the testimony the plaintiff offered two prayers which were granted, and the defendant offered sixteen prayers, of which eight were conceded, three were modified and granted as modified, and five were rejected.   The defendants excepted to the granting of the plaintiff's prayers, and to the rejection and modification of his own prayers.   Without reciting the plaintiff's prayers, we think the propositions of law embodied in them substantially correct, and that when read together, and in connection with the defendant's granted and conceded prayers, they fairly present to the jury the questions at issue.   Some verbal criticism might be made upon that part of plaintiff's first prayer which allows the jury to find "for the value of said services according to the proof in the case," by which however we think the jury must have understood, the *reasonable value* if they found no contract upon the value, or *the agreed price* if they found any agreement upon this point. It is apparent we think that the second prayer was intended as a qualification of the first prayer.   It refers to the first prayer, not by number, or other express designation, but by repeating the conclusive fact of the hypothesis on which the first prayer was founded, whilst explaining what constitutes a member of a family, and what was meant by the expression in the first prayer "the value of said services according to the proof in the case."   This is a case, we think, of qualifying, not contradictory, prayers.   *Rosenstock* v. *Ortwine*, 46 Md. 400; *P. W. & B. R. R.* v. *Larkin*, 47 Md. 166.   Taken together, as they should be, they furnish the true rule of recovery, either upon the theory of *quantum meruit*, or of express contract, and also properly apply to either theory the defense of limitations.   But the appellant contends that plaintiff's second prayer however correct in itself, is inconsistent with defendant's fifth and eight prayers which were conceded, and that plaintiff's prayer could not therefore be properly granted. Defendant's fifth prayer requires the jury to find that there

was, at the time the services were rendered, a design on the part of the plaintiff to charge, and an expectation on the part of Mrs. Staylor to pay, for such services ; and the eighth prayer instructs the jury that if they find any portion of plaintiff's claim was due three years before suit brought, then under the pleadings there can be no recovery for such portion, unless they find a new promise within three years. The supposed inconsistency between the plaintiff's second and the defendant's fifth prayer, is, that the former asserts that if plaintiff was not a member of the family, the rendering of the services furnishes *prima facie* evidence of their acceptance, and raises an obligation to pay what they were worth ; while the latter requires the jury to find the *design* to charge and the *expectation* to pay.

The proposition asserted in plaintiff's second prayer is the same laid down in *Spencer* v. *Trafford*, 42 Md. 20, and repeated in *Wallace* v. *Schaub*, 81 Md. 599.

In *Bixler* v. *Sellman*, 77 Md. 496, and also in *Wallace* v. *Schaub, supra*, it is declared that the rule above, as to the design to charge and the expectation to pay " applies only when a claim is made by a member of the family of the decedent " for, as JUDGE FOWLER states in *Bixler* v. *Sellman*, " of course it must be conceded that generally the law implies a promise to pay for services rendered and accepted ; but a well recognized distinction exists where the service is rendered by a member of the family of the person served. In the latter case a presumption of law arises that such service is gratuitous." When this exception to the rule is borne in mind, the apparent inconsistency is seen to be only a proper qualification by plaintiff's second prayer, of the general language of defendant's fifth prayer, and to be based upon evidence from which the jury might find, either that the plaintiff was, or was not, a member of his aunt's family. And so also when the plaintiff's second prayer is read as a qualification of his first prayer, the instruction as to limitations becomes an element of the second prayer, and thus any apparent inconsistency between that prayer and defendant's eighth prayer upon that point disappears.

But the appellant further contends that both of plaintiff's prayers are fatally defective, because they disregard the evidence produced in respect to assets, as well as the pleading in reference thereto, and authorized a verdict in excess of the assets shown.

Sec. 25 of Art. 26 of the Code provides that where an administrator is sued, if he conceives he has not assets sufficient to discharge the plaintiff's claim, he may plead the fact and " a trial by jury shall be thereupon had." In this case, the administrator has pleaded such insufficiency of assets, to which plea plaintiff replied that there are sufficient assets, and issue was joined on that replication as well as upon the general issue pleas and the plea of limitations.

Sec. 26 of Art. 26, further provides that if on any *such trial,* the *debt* or *demand* of plaintiff shall be contested, and there be any other issue joined than upon the subject of assets, the jury, if they find for the plaintiff upon the issue so joined, and the amount of assets found by them, be less than the debt or demand of the plaintiff, shall declare the amount of the debt or demand, and also the sum to be paid by the defendant to the plaintiff, regard being had to the amount of the assets in hand, and the debts due from the deceased ; and that judgment shall thereupon be entered against the defendant for the penalty of the bond (if suit be upon the administrator's bond), or for the damages laid in the declaration, and the costs of suit (if suit be against the administrator only), to be released upon payment of the sum ascertained to be paid by the verdict of the jury; and by subsequent sections of Art. 26, provision is made for levying the sum so ascertained, either of the goods and chattels of deceased, or of the proper goods and chattels of the administrator; and for levying the residue of the debt or damages, of the goods and chattels of deceased which may thereafter come to the hands of the administrator. These provisions of the Code were not observed. The jury did not pass at all upon the sufficiency of assets, though the undisputed evidence shows that the assets were less than the damages claimed, and less than the amount of the verdict rendered, and it is plain, therefore, that

the judgment was not regularly and properly entered, and that judgment would have been arrested upon motion seasonably filed. There was no such motion, however, and the regularity of the judgment therefore is not before us for review. *Neale* v. *Hermanns*, 65 Md. 478. The verdict for $3,000 was rendered January 30th, and judgment *nisi* was thereupon entered. February 1st, motion was filed for a new trial, and was overruled February 16th, when judgment was made absolute, and on the same day the following docket entry was made : " Judgment only to bind assets by agreement of counsel in open Court." The record is silent as to what led to this agreement, but we were informed at the argument that it was the result of a suggestion from the Court that such course would be better than burdening the jury with the requirements of Art. 26 above mentioned, and we inferred that this agreement in fact preceded the rendition of the verdict, and explains why those provisions of the law were ignored in the prayers of the plaintiff. In the absence of such agreement, we think the plaintiff's prayers would be fatally defective, because under them the right to recover against the defendant, was placed, both in disregard of the pleading and of the evidence as to assets, solely upon the proof and amount of the debt claimed, without regard to the amount of assets in hand. This was clearly error. *Balt. Elevator Co.* v. *Neal*, 65 Md. 457. But we think the agreement that the judgment should only bind assets, operates as a waiver of that defect in the prayers, and is equivalent, *so far as that defect is concerned*, to a concession of those prayers. A party may concede any prayer for reasons satisfactory to himself, and such prayer when conceded, becomes the law of the case, and may not be refused by the Court. *Sittig* v. *Birkenstack*, 35 Md. 278.

This brings us to the defendant's prayers. There was no error in the rejection of his first and second prayers by which it was sought to withdraw the case from the jury. The fourth prayer was properly rejected, if for no other reason, because the fifth which was conceded, gave him everything he could have secured under the fourth in connection with plaintiff's prayers.

The ninth and sixteenth prayers were properly rejected, because they segregate the facts, and instead of confining the conclusion to the effect of these facts they conclude to the whole right of recovery.

There was no error in the rejection of the sixth, seventh and eleventh prayers as offered, or in the modification of these prayers by the Court, and then granting as modified. but for the error we have indicated in the third exception the judgment must be reversed.

> *Judgment reversed with costs to appellant above and below, and new trial awarded.*