## ROGER T. GILL, ADMINISTRATOR, *vs.* JOHN STAYLOR.

*Action to Recover for Services Rendered to Defendant's Decedent— Sufficiency of Acknowledgment to Remove the Bar of the Statute of Limitations—Admissibility of Evidence—Promise to Pay at Death.*

When the question at issue is whether or not the plaintiff had been paid certain wages during a number of years, the evidence of third parties that the plaintiff during that period was always very shabbily dressed and seemed to be impecunious is not admissible, because it does not prove that the plaintiff had not been paid nor the value of the services rendered by him.

A witness may be asked a preliminary question designed to show what opportunities he had to become acquainted with the facts concerning which he subsequently testifies.

In an action to recover compensation for services rendered, evidence as to the amount paid to another employee of the defendant is not admissible, because it does not tend to show either that the defendant had agreed to give plaintiff the same amount or that plaintiff's services were of the same value.

In an action to recover wages for services rendered to defendant's decedent during thirteen consecutive years before her death, the plaintiff, in order to remove the bar of the Statute of Limitations, offered evidence showing that within three years before the institution of the suit the decedent declared her purpose to provide for the plaintiff by her will and that she said she consequently did not give him anything but his board and a little spending money. *Held*, that the evidence fails to show either a promise by the deceased to pay the wages claimed or such an acknowledgment of a present subsisting indebtedness as is requisite in order to remove the bar of the statute.

*Held*, further, that since the bar of the Statute of Limitations had not been removed, the plaintiff can recover only for services rendered by him within three years before the suit was brought, provided it was found by the jury that he had not been paid therefor.

Evidence offered by the plaintiff in an action to recover compensation for services rendered a decedent was to the effect that the latter had promised that the plaintiff should be paid out of her estate after death, as well as a promise to pay generally. At the request of the plaintiff the trial Court instructed the jury that if they should find there was no agreement between the parties as to price, then the plaintiff is entitled to recover such sum as the services were worth, provided they should find that the promise was made to take effect within three years prior to the institution of the suit. *Held*, that this instruction is susceptible of two interpretations, namely, either that such promise as would remove the bar of the Statute of Limitations was made within three years before the suit was brought, or that the original promise to pay for the services was intended to be performed only after the death of the defendant's decedent, but that the latter alternative interpretation is excluded, because the jury were also instructed by another prayer that before they could return a verdict for the plaintiff for any wages earned more than three years prior to the institution of the suit, they must find that within three years before the suit was brought, the decedent either expressly promised to pay such wages or that she made a distinct acknowledgment that such wages were due and were an existing obligation.

Appeal from the Superior Court of Baltimore City (PHELPS, J.)

The cause was argued before McSHERRY, C. J., FOWLER, PAGE, BOYD, PEARCE and SCHMUCKER, JJ.

*William S. Bryan, Jr.*, for the appellant.

*Charles Morris Howard* (with whom was *Francis P. Curtis* on the brief), for the appellee.

McSHERRY, C. J., delivered the opinion of the Court.

This case is here for the second time. The former appeal will be found reported in 93 Md. 453. The judgment against which the first appeal was taken was reversed and a new trial was awarded. The new trial resulted in a second verdict and judgment for the plaintiff, and hence the pending appeal. The suit was instituted to recover from the administrator of Catharine L. Staylor, deceased, wages alleged to have been earned by the plaintiff in the service of the decedent during her life time. The period over which the services are alleged to have extended covered thirteen consecutive years from the fall of 1886 to October, 1899, when Mrs. Staylor died. With the declaration there was filed a bill of particulars wherein the plaintiff claimed five dollars a week for each week of those thirteen years. The defendant pleaded never promised, never indebted and the Statute of Limitations. The plaintiff set up a special oral contract by the terms of which he was to receive five dollars per week; and he insisted that no part of the sum earned by him had been paid. The defendant, on the other hand, insisted that the contract price for the services was three dollars per week, which had been paid. During the progress of the second trial six bills of exception were signed; five of which relate to rulings on the admissibility of evidence and the sixth to the action of the trial Court on the prayers for instructions to the jury.

The first, second and third exceptions, presenting cognate if not identical questions, will be considered together. For the purpose of proving that the wages sued for had not been paid, a witness testified that the plaintiff " was a moderate liver and not an extravagant man any way, because the way his living showed it." Thereupon the plaintiff's counsel asked: " In what respect did his living indicate that?" To that question objection was made but the Court overruled the objection and the witness answered: " I judged from his appearance. I speak from the observation I saw of the man on the street and the dress he has got there," and the witness then went on to describe the plaintiff's clothes. In the second exception

another witness was asked: "What can you say during the time that John was living with Mrs. Staylor after the death of Mr. Staylor about his condition and appearance?" The witness replied, when the objection to the question had been overruled: "I never knowed him to have any money nor any clothes but one suit to my knowledge." He described the plaintiff's clothes as ragged and said they were fastened with sticks. In the third exception another witness was asked: "What did you observe in regard to his appearance as indicating prosperity or otherwise, or anything?" Over the defendant's objection the witness was permitted to answer, and he replied: "John's appearance of prosperity was very bad so far as I saw, any other young man around was dressed better than he was."

We think it quite clear that there was error in each of these rulings. The testimony was wholly irrelevant to any issue joined in the cause. It did not prove that the services alleged to have been rendered were performed; nor did it establish their value, nor did it tend to show that the plaintiff had not been paid or that the deceased within three years before the suit was brought had promised to pay for them. If it were universally and invariably true that every individual who earned and was paid his wages always dressed well and always had money in his pocket, then the fact that he did not dress well and that he was without money might tend to show that he had not been paid. But there are too many careless and improvident persons in the world to permit indifference in dress or impecuniosity to be treated as evidence in any way tending to prove the non-payment of a debt alleged to be due to them. There is not the slightest relation between those very common conditions and the conclusion sought to be drawn from them.

Mrs. Donavin was called as a witness. She testified that she had worked for her aunt, Mrs. Staylor, and the fourth exception was taken to the action of the Court in allowing her to be asked this question: "Just state how you came to go there and what you were doing there?" The witness went to do housework for Mrs. Staylor shortly after the plaintiff had

been hired to do the butchering which Mrs. Staylor carried on after the death of her husband. The question was merely preliminary and was evidently designed to lay before the jury a description of the opportunities which the witness had had to become acquainted with the facts to which she later on deposed. We do not see any error in the ruling.

Mrs. Staylor also had in her employ her brother, Albert W. Lutz, to assist in the butchering business. In the fifth exception Mrs. Donavin was asked: "Do you know anything about Mr. Lutz's payment, as to how much wages he got?" That question was allowed to be asked over the defendant's objection, and the witness replied: "He got five dollars a week." Proving what wages Lutz got did not tend to show that Mrs. Staylor had agreed to give the plaintiff the same amount, nor did it throw any light on the inquiry as to what the services of the plaintiff were worth. The question should have been excluded.

We now come to the prayers set out in the sixth exception. The plaintiff presented one and the defendant seven, besides two special exceptions to the plaintiff's prayer. The plaintiff's prayer was granted, the special exceptions thereto being overruled, and the defendant's second, third, fourth and sixth prayers were granted, whilst the first, fifth and seventh were rejected.

The plaintiff's prayer is nearly identical in terms with the defendant's seventh modified prayer as granted on the first trial. It proceeds upon two theories, namely, first if the jury should find that there was a contract of hiring at a stipulated price and that the services were rendered and that the decedent in her lifetime promised to pay therefor, then the plaintiff was entitled to recover the agreed price; and secondly, if the jury should find there was no agreement as to price, then the plaintiff was entitled to recover such sum as the services were worth not exceeding the price named in the account filed, provided in each instance the jury should further find that said promise was made to take effect within three years prior to the institution of the suit. There were two special exceptions

filed to the granting of that prayer: First, that there was no legally sufficient evidence to authorize a recovery on the *quantum meruit;* secondly, that there was no legally sufficient evidence of any new promise made to take effect within three years prior to the institution of the suit. If neither of these special exceptions prevails the prayer must he held to be sound, because it is a substantial reproduction of the defendant's modified seventh prayer in the first trial, and that prayer was decided by this Court to be correct on the former appeal; 93 Md. 458–475. We must now turn to the record to ascertain whether either of the special exceptions is well founded. With respect to the first special exception we need only say that there was sufficient evidence of the value of the plaintiff's services to justify a finding on the *quantum meruit* if the jury were satisfied that there was no contract which fixed the amount of the wages. The second special exception presents a more difficult question. The concluding proviso of the plaintiff's prayer is susceptlble of two interpretations, namely, either that such a promise as would remove the bar of the Statute of Limitation was made within three years prior to the institution of the suit; or, that the original promise to pay for the services was intended to be performed only after the death of Mrs. Staylor—that it was a *post obit* promise. The defendant's sixth prayer, which was granted, obviously restricts the proviso to the first of the two named alternatives, or else the two prayers are hopelessly inconsistent, because the sixth prayer distinctly instructed the jury that under the pleadings, before the jury could return a verdict for the plaintiff for any wages earned more than three years prior to the institution of the suit, they must find that within three years before the suit was brought Mrs. Staylor either expressly promised to pay such wages, or that she made a distinct acknowledgment that such wages were due and were an existing obligation. Now, if an express promise or a distinct acknowledgment made within three years before the bringing of the suit was necessary to enable the plaintiff to recover for any wages earned more than three years prior to the institution

of the suit, it was clearly so because but for such promise or acknowledgment the Statute of Limitation would have defeated a recovery for any wages earned more than three years before the suit was brought, and this could not have been the case if the undertaking on the part of Mrs. Staylor had been to pay only after her death—the suit having been brought on February 9th, 1900. Excluding then the *post obit* contention, because even upon the concession that the evidence supported it the defendant's sixth prayer eliminated it, is there any legally sufficient evidence to show such a promise or acknowledgment as would remove the bar of the statute to that part of the claim which accrued more than three years before the suit was brought?

The law of Maryland is definitely settled as to what promise or acknowledgment will remove the bar of the statute. To remove the bar of the statute an acknowledgment of a present subsisting indebtedness must be proved and it must not be accompanied by any qualification or declaration, which, if true, would exempt the promisor from a moral obligation to pay. *Stewart* v. *Garrett & Maus*, 65 Md. 392; *Dawson* v. *King*, 20 Md. 442; *Ellicott* v. *Nicholls*, 7 Gill, 98. Several witnesses testified to sundry statements made by Mrs. Staylor considerably more than three years before her death and we will consequently not pause to consider them. There are only three witnesses who profess to give declarations of Mrs. Staylor within three years before the suit was brought; and they are Mrs. Donavin, Christian Brandau and John McKewen. Mrs. Donavin testified : " Mrs. Staylor never paid Johnny anything at all. Q. State how you came to know that? A. Of course I would see them if he got anything, he would ask Mrs. Staylor for twenty-five cents or ten cents to get a piece of tobacco or anything, if he had any money I don't think he would come and beg her for it. Johnny would come to Aunt Kate and say I want some money and she said, oh, Johnny, you don't want it now, wait till I die, she said, I will leave it to you and Maggie. All to you and Maggie when I die and Johnny says I don't think I am going to get anything at all ;

and she said yes you will, I will leave it all to you and Maggie, don't take it away now while I am living and of course Mr. Staylor didn't bother her any more talking about it. I have heard her say that lots and lots of times. I remained there four and a-half years. I stayed there until 1890, I was married in 1891, I left there about six months before I was married. I visited my aunt right often after I was married. I had conversations with her on the subject of Johnny after I left. The month before she died she said to me, Maggie won't you come here and take care of Johnny, she said I don't think I am going to live much longer, and won't you come here and keep house for him, take care of him; I said, yes, auntie, I will certainly take care of Johnny as long as he lives, and she said all right, I will be satisfied' if I take care of Johnny, everything I have got is Johnny's and yours ; that was about a month before she died." Brandau testified : "I don't know anything about their relations or what wages he was getting or wages promised. Mrs. Staylor said he didn't get anything outside of a little spending money and his board and she would fix him at the end of her death. Q. She said he didn't get anything outside of a little money ? A. And board. Q. But she would fix him at her death ? A. That was what she told me. Q. She told you that herself ? A. She told me that directly. Q. When did she tell you that ? A. Well, as late as 1898, about a year before her death."

On cross-examination witness said :

" Q. What was it she said ? A. She said she had fixed Johnny at the end of her death. Q. She had fixed Johnny at the end of her death ? A. Yes, sir, and he wasn't getting anything outside of board and a little spending money. It was verbal conversation ; she didn't write a letter to me." McKewen testified as follows : " She said she was saving his money and after this one day about eighteen months before she died I was at the place and could hear her, she was talking to Johnny and Mrs. Staylor had a little quarrel and she says, I was sitting at a fence between us and she was scolding with John and I said Mrs. Staylor it don't look like you are

going to do what you said, she was saving the money there for him and the business was his when she died and that was the remark I related to her over the fence. Q. You said they had a little quarrel? A. Yes, sir. Q. What do you mean? A. Words you know, jawing about something, some private matter inside there, I don't know what it was, something the matter or something, I couldn't tell whether it was money he wanted her to give him, I don't know what it was, but she quarrelled and she was giving him a jawing and this remark that she said to him when I says 'that don't look like you were going to do what you said,' and she said I have got to do something with him to stop him. Q. She said I have got to do something with him? A. She said she had to do something to John when he had got the humps anyhow to stop him, she meant to cool him down and go to work so she said but whatever the dispute was about I don't known and John made believe, I think, he was going away and he would leave there, or something of the character. Q. Did she or not at a later time than after this ever tell you anything about saving his money? A. Yes, sir; she told me that after. She said I am saving his money for him right there. Q. Right in the yard there? A. Yes, sir; right afterwards. Q. In the yard that day? A. Yes, sir; right afterwards, yes, sir."

We do not think that any of this testimony can be strained into a promise to pay or into an acknowledgment of a subsisting debt. At best it consists of loose and inconclusive declarations of a purpose on the part of Mrs. Staylor to provide for the plaintiff after her death, and that could only mean by will as he was not one of her next of kin. It falls very far short of showing either a promise to pay a debt or an acknowledgment of a subsisting debt and the special exception we are now considering should have been sustained. On the former appeal there was no special exception to the plaintiff's prayer and therefore no question as to the legal sufficiency of the evidence to support its hypothesis arose or was considered. Of course it must be understood that the rejection of this first prayer would not preclude the plaintiff from recov-

ering the value of the services he rendered within three years before the suit was brought.

The defendant's first and fifth prayers, which were rejected, restricted the right of recovering to the value of the services rendered within three years before the suit was brought. Both prayers refer to the pleadings and in view of the conclusions we have reached in considering the plaintiff's first prayer ought to have been granted, unless the evidence justified the jury in finding that by the terms of the employment the plaintiff was not to be paid until the death of Mrs. Staylor. But that theory was distinctly excluded by the granted sixth prayer of the defendant. There was no error in rejecting the defendant's seventh prayer. The credibility of the testimony tending to show payment was for the jury and not for the Court to pass upon.

Because of the errors indicated, namely, the rulings in the first, second, third and fifth exceptions and the granting of the plaintiff's prayer in the teeth of the second special exception, and the rejection of the defendant's first and fifth prayers, the judgment must be reversed and a new trial will be awarded; and it is accordingly so ordered.

*Judgment reversed with costs above and below and new trial awarded.*

(Decided July 2nd, 1903.)