## SHAEFER *v.* HEWES, Executor

[No. 264, September Term, 1960.]

*Decided May 2, 1961.*

The cause was argued before BRUNE, C. J., and HENDER-SON, HAMMOND, MARBURY and SYBERT, JJ.

*A. Frederick Taylor,* with whom were *Paul Martin* and *Martin & Taylor* on the brief, for the appellant.

*Douglas G. Bottom,* with whom were *J. Temple Smith* and *Smith & Bottom* on the brief, for the appellee.

MARBURY, J., delivered the opinion of the Court.

The appellant, Catherine Shaefer, filed suit under the common counts in assumpsit against the appellee, J. Edward Hewes, executor of the estate of Maggie May Hundertmark, alleging that she had performed certain services for the appellee's decedent during the latter's lifetime. The trial before the court, sitting without a jury, resulted in a judgment in favor of the appellee for costs, from which the appellant appeals.

The appellant is a housewife residing in the village of Boring, Baltimore County, and is the wife of Edgar Shaefer, who was the nephew by marriage of Mrs. Maggie May Hundertmark (appellee's decedent). She knew Mrs. Hundertmark for many years dating from before her marriage to Edgar Shaefer, who at that time did work on the Hundertmark farm. Mrs. Hundertmark was widowed in 1941, and a year later, after a stroke which paralyzed her left side, moved to a house on Old Hanover Road, where she lived until her death on November 10, 1958. From the time of moving to her last residence she was compelled to use a walker or wheel chair, and could not do anything for herself.

After the stroke a series of elderly women companions lived with Mrs. Hundertmark for nominal pay and room and board. The real work of the many tasks necessary to run the household of an invalid was done by the appellant who went to the home three or four times every day, doing the cleaning, cutting wood, laundry, ironing, running errands, putting on

storm doors, cooking, mowing grass, painting, nursing and so forth—far beyond the call of friendship. These services testified to by the appellant were completely corroborated by Mrs. Ross Gill, the only other witness who testified, who had known Mrs. Hundertmark practically all her life and who was her next door neighbor from 1942 until her death in 1958. Mrs. Gill testified that Mrs. Hundertmark had told her a number of times that "she hoped when she was gone, Catherine would put a bill in against the estate, and make it a good one." At the conclusion of the appellant's evidence the appellee rested.

The sole question presented in this case is whether the trial court erred in denying the appellant's claim against the estate of appellee's decedent in view of the uncontradicted testimony that decedent agreed that her estate should pay for appellant's services, and that the appellant by her continued services accepted the offer.

The trial judge in his oral opinion rested his verdict upon the premise that he felt that at the time of the rendition of the services sued for there was no expectation to pay or to be paid for them and for that reason "reluctantly" entered judgment for the defendant.

It is the appellant's contention, with which we agree, that because of the lack of family relationship, in that the claimant is the wife of the nephew of the decedent's husband, there is no presumption of gratuity. This relationship has been clearly ruled on by this Court in *Gill v. Staylor,* 93 Md. 453, 49 Atl. 650, where it was held that the nephew of the decedent's husband was not a member of her family so as to raise the presumption that services rendered by him for her were intended to be gratuitous, although he had received his board from the decedent, but no money, for about thirteen years.

In this case the appellant's position is further strengthened by the fact that she lived in her own household and daily went to the home of the decedent to perform the services, the value of which is the basis for this suit. In addition the testimony of Mrs. Gill clearly indicates an expectation on the part of

the decedent to pay for the services, as the word "bill" clearly connotes an obligation.

Under Maryland decisions services rendered for a decedent by a member of his family give rise to a presumption that the services were rendered gratuitously so that the plaintiff must show that the services were performed under circumstances so as to demonstrate a reasonable expectation that there would be compensation, *Zahn v. Heil,* 192 Md. 576, 64 A. 2d 564; *Roycroft v. Nellis,* 171 Md. 136, 188 Atl. 20; *Doyle v. Gibson,* 119 Md. 36, 85 Atl. 961; *Gill v. Staylor, supra;* but if the plaintiff was not a member of the decedent's family, then the rendering of services is *prima facie* evidence of their acceptance and an obligation to pay what they were worth, if there is no evidence of an expressed contract to pay a definite sum. *Doyle v. Gibson, supra; Harper v. Davis,* 115 Md. 349, 80 Atl. 1012; *Gill v. Staylor, supra; Wallace v. Schaub,* 81 Md. 594, 32 Atl. 324; *Spencer v. Trafford,* 42 Md. 1.

Under the evidence in this case and the cases cited above it is clear that the relationship was not of such a character as to make the appellant a member of the family which would create a legal presumption that the services were rendered gratuitously. The appellant has clearly proven the performance of services, the acceptance of them, and the intention to pay on the part of the decedent. The law implies a promise to pay for services rendered and accepted and the burden is on the party resisting the payment to show that no charge was to be made. Here there is no such proof, and the appellant is entitled to the reasonable value of her services as proven under the common count for work done on a quantum meruit basis.

Counsel for the parties stipulated that the claim filed should be received in evidence. It was in the amount of $5,382.00 for "laundry, cleaning and nursing, $27.00 per week at $1.00 an hour" for the years 1955-57 and ten months of 1958. The uncontradicted evidence indicated that the rate of $1.00 an hour would be fair and reasonable. We think the trial court was clearly wrong in its determination and that the judgment

appealed from should be reversed and judgment entered for the appellant for the amount of the claim.

*Judgment reversed, and judgment entered in favor of the appellant for $5,382.00, with costs.*