JACOB H. FEESER, ADMINISTRATOR, ETC., *vs.* DAVID H. FEESER.

*Obligation Under Seal Acknowledging an Indebtedness Payable After Maker's Death.*

An instrument under seal by which the obligor declares that a certain sum is due to the obligee but making the sum payable after his death by the obligor's executor is a valid obligation binding on the estate of the maker, since it creates a *debitum in præsenti.*

Defendant's testator executed and delivered to the plaintiff the following instrument under seal : "Due D. H. F. the sum of $204.68, with interest from date, and said sum is not to be paid during my life-time, but to be

paid by my executor out of my estate within one year after my death and said sum is due and owing by my son E. D. F. to said D. H. F. I bind my executor to pay the sum out of my estate as aforesaid, and then to be deducted of the distributive share coming to my son E. D. F. out of my estate." In an action by the obligee, *held*, that the instrument creates a valid obligation binding on the estate of the obligor, and the direction to deduct the sum from the distributive share of E. D. F. does not relieve the obligor from the indebtedness.

Appeal from the Circuit Court for Carroll County.

The cause was argued before McSHERRY, C. J., FOWLER, BRISCOE, PAGE, BOYD, PEARCE and SCHMUCKER, JJ.

*Charles T. Reifsnider, Jr.*, (with whom was *E. Oliver Grimes, Jr.*, on the brief), for the appellant.

The question of consideration is eliminated but the seal does not determine the character or nature of the instrument. *Cover* v. *Stem*, 67 Md. 449. Whether the instrument shall be declared a valid obligation, or have a testamentary character only, must be determined from the terms and provisions of the instrument itself. *Carey* v. *Dennis*, 13 Md. 17. The instrument itself shows that the debt was due by the son and not by the maker of the paper-writing ; no promise to pay, no admission or acknowledgment of maker's obligation to pay can be gathered from the four corners of the paper and there is no reason why the other beneficiaries of the will, if there be any, should be required to contribute to the payment of this son's debt.

In order for the paper-writing to create a valid obligation it is essentially necessary that words be employed to declare the intention of the party and which must clearly denote, *his being bound*, "because such obligation is only in the nature of a contract or a security for the performance of a contract which ought to be construed according to the intention of the parties." As a general rule it may be said that any instrument under seal whereby the party from whom the security is intended to be taken *obliges himself* to pay a certain sum of money at a day specified will constitute a bond. *2 Blackstone*,

340, 55 Md. 141.   In what respect has William J. Feeser "obliged himself" or what words denote "his being bound?" If he did not bind himself primarily how could he impose any obligation upon the appellant to pay after his death?

The term and provision of the paper-writing "not to be paid during my life-time" might with all propriety mean that for the protection of the son there should be no attempt to make the money during the maker's life-time, and therefore he directed his executor to pay the son's debt within one year after his own death.   As the paper-writing declares upon its face that it is the son's debt, that it is due and owing David H. Feeser by Ezra Feeser there could be no inference from those words that could tend to show it was the maker's valid obligation.   By its acceptance David H. Feeser simply forbears to press the son and William J. Feeser directs his executor to pay the son's debt.   William J. Feeser by the paper-writing filed in the case, as the cause of action, is bound no where by it and the paper-writing is only a direction to the executor to pay.   *Cover* v. *Stem*, 67 Md. 449.

The case of *Price* v. *Jones*, 105 Indiana, 543, cited by the plaintiff below was a paper-writing in the following words: "One day after my death, I promise to pay to the order of Nancy M. Jones $2,000, to be paid out of my estate."   That paper-writing created the relation of debtor and creditor in the life-time of the parties to the instrument, although the time of payment was deferred until after the death of the signer. The terms employed created a *debitum in præsenti* though the *solvendum* was in *futuro* and came after the death of the maker. In the case of *Moore* v. *Stephens*, 97 Indiana, 271, the cause of action was: "At my death my estate shall pay to Treasurer of the Benevolent Fund the sum of $2,000."   The instrument was held not to be the contract on the part of the maker that he would do any act or pay the sum of money therein mentioned.   It contained no admission of any indebtedness, and furnished no evidence of such indebtedness.   It was simply an attempt on the maker's part to dispose of $2,000 of her estate after her death.   The instrument was therefore

testamentary in character.  In 19 Conn. 7, the cause of action
was : " On demand, after my decease, I promise to pay ———
$850 without interest."   In *Roffey* v. *Greenwell*, 10 Adolphus
& Ellis, 222, there was an express promise to pay a certain
sum of money one year after maker's death, and in *Martin* v.
*Stone*, 29 Atl. Rep. 845, there was an express promise to pay
a certain sum of money to be allowed at maker's decease.
In the latter case the Court held "the phrase to be allowed
at my decease " was evidently introduced in view of the fact
that payment was not to be made by the signer in his life-time,
but was to be allowed or paid out of his estate after his de-
cease.   It could have been omitted without changing the
meaning.   But in that case the words " I promise to pay to
Nellie F. Sanborn or order $10,000," created a *debitum præ-
sænti*, though the *solvendum* was in *futuro*, and after the death
of the signer.   In the case at bar all that part of the paper
up to that part directing how and by whom the payment is
to be made, fails to create a *debitum in presænti*, consequently
the cases are not analagous.   The one part is not contractual
while the other is confessedly testamentary, and no part can
be rejected as surplusage.

The cause of action in the case at bar is absolutely devoid
of every essential requisite of a bond save the one—it has a
seal and cannot be distinguished in its nature and character
from the cause of action in the *Cover* v. *Stem case*, 67 Md.
449.   The paper is clearly testamentary in its character.   MR.
JUSTICE BULLER in *Habergham* v. *Vincent*, 2 Vesey Jr., 231,
held : " The cases have established that an instrument in any
form whether a deed poll or indenture if the obvious purpose
is not to take place till after the death of the person making
it, shall operate as a will."   The intention of the maker must
be gathered from the paper itself.   The form in which the
paper appears has but little to do with the ascertainment of its
real character and meaning.   The following cases illustrate
very forcibly how little the question of form has to do with
the consideration and determination of the character of papers :
*Johnson* v. *Yancy*, 20 Ga. 707; *Matter of Will of Belchner*, 66

N. C. 51; *Hester's Executor* v. *Young*, 2 (Kelly) Ga. 46; *Carey* v. *Dennis*, 13 Md. 15; *Dudley* v. *Mallory*, 4 Ga. 52; *Kelleher* v. *Kernan*, 60 Md. 442; *Hoppe* v. *Byers*, 61 Md. 206; *Brewer* v. *Baxter*, 41 Ga. 212; *Turner* v. *Scott*, 51 Pa. St. 126; *Miller* v. *Holt*, 68 Mo. 584; *Fosselmau* v. *Elder*, 1 Pa. S. Ct. 77; *Cowley* v. *Knapp*, 42 N. J. Law, 297; *Morrell* v. *Dickey*, 1 Johns, Ch. 153; *Bartholomew* v. *Henley*, 3 Phillimore, 317.

It is claimed that the delivery of this paper to David H. Feeser lends great force to the contention of the appellee. In the *Hoppe case*, 61 Md., the paper was sent to Mrs. Byers and in the *Cover and Stem case*, 67 Md. 449, the paper was delivered; and in quite a number of the cases just quoted the papers were delivered. Delivery can give no aid to the appellee so long as the paper retains its testamentary character. *Cover* v. *Stem*, 67 Md. 449. Whether William J. Feeser would have called this paper a bond or a will is one question, whether it shall operate as a valid obligation or a will is a distinct question that is governed by the provisions in the instrument, a bond must take effect on its execution and delivery or not at all. *Habergham* v. *Vincent*, 2 Vesey Jr., 231; *Cover* v. *Stem*, 67 Md. 449. What did William J. Feeser intend when he signed this paper-writing? Did he intend to pass any present interest whatever to vest before his death and upon the execution and delivery of the paper, or on the other hand, did he intend that all the interest should take effect only after his death? *Gillham* v. *Mustin*, 42 Ala. 365.

*Guy W. Steele*, for the appellee.

The demurrer admitting the facts raises the question whether or not they are sufficient in law for a suit; whether or not the writing obligatory which was executed and delivered by Wm. J. Feeser, in his life-time, to David H. Feeser, is a contract, or whether it is a testamentary paper or will. The rule followed by all Courts in construing a paper of this kind is, "that if the instrument passes a present interest, although the right to its possession or enjoyment may not accrue until some future time, it is a deed or contract, but if the instrument does

not pass an interest or right, until the death of the maker, it is a will or testamentary paper." *Burlington University* v. *Barrett*, 22 Iowa, 60 (92 *Am. Dec.*, p. 381), and this Court, applying it, has said : "That the relation of debtor and creditor must be created and exist in the life-time of the parties to the instrument, although the time of payment be deferred until after the death of the parties." *Cover* v. *Stem, Ex.*, 67 Md. 452; *Carey et al.* v. *Dennis et al.*, 13 Md. 18.

A debt is "a sum of money due by certain and express agreement." 3 *Blackstone*, p. 154—it is "money due upon a contract, without reference to the remedy for its collection." *Gill case*, 31 Md. 375.

Whenever a legal contract or agreement for the payment of money is made, the relationship of debtor and creditor is created. The agreement may be either verbal or written. In this case it is written. It is proper therefore to inquire what is necessary to create a valid written contract for the payment of money between parties capable of contracting. The most common form of written contracts for the payment of money are promissory notes and single bills. They are required to be of no particular form of words ; all that is requisite being that they recognize the existence of a debt and such language is employed that a promise to pay, if not expressed, may be implied. *Chitty on Bills of Exchange*, p. 525, 3 *Kent*, 74–5; *Daniel on Negotiable Instruments*, sec. 39, &c. They must be signed (and in case of single bills, sealed), and delivered. Such writings for example, as "Due John Allen on demand, $94.91." "I. O. U. 20 pounds, to be paid on the 22nd inst," when signed and delivered constitute as binding a contract as the most formal of writings. *Bishop* v. *State*, 55 Md. 141.

The word "promise" does not have to appear in the writing. It is only necessary that the written terms used in their proper legal construction shall import a recognition by the maker of the existence of a debt, which he binds himself to pay at a definite time, or no time being named, on demand. He does not have to bind *himself* expressly, the signing of his name does that. *Bills and Notes, Parsons*, vol. 1, p. 24–5;

4 *Encyl. of Law*, p. 82, 2nd ed ; *Pothier on Obliga*, p. 61; *Dan'l on Negotiable Instruments*, sec. 39, note; *Smith* v. *Allen*, 5 Day, 337.

The instrument in this case upon which suit is brought conforms to these requirements. It recognizes that there is due to the payee a certain sum of money, and having been signed, sealed and delivered to David H. Feeser, it became irrevocable. It was argued below by the appellant, that the obligor should have *expressly* promised or bound *himself* in the instrument, but this, as has already been shown, is entirely unnecessary. It is a contract for the payment of money, a definite amount, at a fixed time, and the right to receive the money vested in the appellee when the writing was delivered to him, which was in the life-time of the obligor, and is at that moment created a *debitum in præsenti.* *Carey case*, 13 Md. p. 18; *Devries* v. *Shumbte*, 53 Md. 211. *Am. & Eng. Ency. of Law*, vol. 2, p. 343 (1st ed.)

The fact that the debt evidenced by this instrument was not to be paid until after the death of the maker, cannot destroy its contractual character. Even a parol promise may be enforced (*Riley* v. *Riley*, 25 Conn. 154), and a voluntary covenant that the obligor's executor shall pay within a certain time after death a definite sum to the obligee is a good contract and enforceable. *Krell* v. *Codman*, 154 Mass. 454; 14 L. R. A., p. 860. "The mere fact that a note is payable on the death of the maker, or on a certain day thereafter, does not make it testamentary paper." *Huguley* v. *Lanier*, 86 Ga. 22; *Miller* v. *Western College* (Ill.) 42 L. R. A., p. 802; *Price* v. *Jones*, 105 Ind. 543, 55 Am. Rep. 230; *Bristol* v. *Warner*, 19 Conn. 7; *Roffey* v. *Greenwell*, 10 Adol. & Ellis, 222; *Martin* v. *Stone* (Pa.), 29 Atl. Rep. 845; *Judy* v. *Louderman*, 48 Ohio, 562; *Story on Promissory notes*, sec. 27; *Dan'l on Neg. Instru.*, sec. 46; see also *People* v. *Arguello*, 37 Cal. 525. The following instruments of writing executed and delivered by the maker to the payee were all held to be contracts and not testamentary papers : "On demand after my decease I promise to pay B or order $850.00 without

interest." *Bristol* v. *Warner*, 19 Conn. 7. "I promise for myself and my executors to pay F. H. or her executor one year after my death 360 pounds, with legal interest." *Roffey* v. *Greenwell*, 10 Adol. & Ellis, 222. "Thirty days after my death I promise to pay to Cornelius Cornwright fifteen hundred dollars, with interest." 12 L. R. A. 845. "For value received I promise to pay Nellie F. Sanborn, or her order, ten thousand dollars, to be allowed out of my estate, with interest at 5 per cent annually." *Martin* v. *Stone* (Pa.), 29 Atl. Rep. 845. "One day after my death I promise to pay to the order of Nancy M. Jones two thousand dollars, to be paid out of my estate, for value received, without relief from valuation or appraisement laws, with six per cent interest until paid and attorneys fees." *Price* v. *Jones*, 105 Ind. 543.

3. Admitting for the purpose of argument that the terms of this instrument are ambiguous, and that some of the expressions used are of a testamentary character, yet the demurrer was properly overruled, as "the language is not to govern entirely, but the Court looks further, and considers the facts surrounding the execution of the instrument, and gives such interpretation, as will effect the intention of the parties—an instrument may be partly a deed and partly testamentary." *Burlington University* v. *Barrett, supra; Robinson* v. *Schley*, 6 Ga. 526. In such cases even the instructions given by deceased to party preparing paper may be offered in evidence. *Warehime* v. *Sellers*, 9 G. & J. 98.

BOYD, J., delivered the opinion of the Court.

The declaration filed in this case by the appellee against the appellant contains six counts. The defendant filed a demurrer to the whole declaration, and not to each count, which was overruled and, having refused to plead, judgment by default was entered against him, which was subsequently extended for the amount of plaintiff's claim. Although alleged technical errors in the *narr.* are suggested in the briefs, an agreement of the attorneys was filed at the argument showing that it was the desire of both parties to have us determine

whether the instrument sued on is a valid obligation, binding the estate of defendant's decedent, and, as it is set out in full in one of the counts, we will pass on that question, without considering the technical defects alleged to exist. The instrument which was executed by William J. Feeser, under seal, is as follows: "$204.68. Due David H. Feeser the sum of two hundred and four dollars and sixty-eight cents, with interest from date, and said sum of money and interest is not to be paid during my life-time, but to be paid by my executor, out of my estate within one year after my death, and said sum of money is due and owing by my said son, Ezra D. Feeser, to the said David H. Feeser. I bind my executor to pay the same out of my estate as aforesaid, and then to be deducted of the distributive share coming to my said son, Ezra D. Feeser, out of my estate. Witness my hand and seal this 24th day of August, 1887."

It was said in *Carey* v. *Dennis*, 13 Md. 17, " that where an instrument does not operate *inter vivos*, but is made to depend for its whole operation upon the event of the death of the maker to consummate it, then it can only take effect as testamentary." In that case the bonds sued on were in such form as would ordinarily bind the maker, but they were given by a father to a third party with directions "to take care of them, and deliver them to his sons in case he died without a will," and they were not delivered to them in the life-time of the father. Our predecessors held that delivery in the life-time of the maker was essential to the validity, as debts, and they were in the nature of testamentary papers. But in the case before us no such difficulty arises, and, as was said in *Cover* v. *Stem*, 67 Md. 449, the question is whether this instrument is " in its *nature* a bill obligatory, binding and conclusive upon the maker, or whether it be a mere posthumous disposition " of so much money to be paid by the executor. It is clear that this is a very different instrument from the one under consideration in the last-mentioned case, which was under seal but simply read, "At my death, my estate or my executor pay to July Ann Cover the sum of three thousand dollars." This

instrument begins "*Due* David H. Feeser the sum of two hundred and four dollars and sixty-eight cents, with interest from date." "The word 'due' has a variety of meanings, depending on the connection in which it is used. It has been defined generally to be that which is owed, that which custom, statute or law requires to be paid." 10 *Ency. of Law* (2nd ed.), 277. In *Burton* v. *State*, 3 Gill, 13, a due bill was regarded as equivalent to a "written acknowledgment of an indebtedness to a certain extent." In *Wilderman* v. *Rogers*, 66 Md. 127, a due bill was held to be within the statute authorizing a married woman to be sued "on any note, bill of exchange, single bill, bond, contract or agreement, which she may have executed jointly with her husband." The Court said that while it "may not be a formal negotiable promissory note containing terms of express promise to pay * * * any note, the legal import of which is a promise or obligation to pay, is sufficient to gratify the terms of the statute"— thus implying that the legal import of a due bill is a promise or obligation to pay. If the clause we have last quoted above was all of this instrument, it would be an ordinary due bill, and the use of the word "due" would import an obligation to pay. Now is there anything in the instrument which can be properly said to affect the legal import of that term, as it is used? On the contrary, there are other provisions in it which clearly sustain the idea that there was an intention to create a *debitum in præsenti*. It goes on to say "and *said sum of money is not to be paid during my life-time, but to be paid by my executor out of my estate within one year after my death.*" Taken together, the two clauses we have quoted are sufficient to show the acknowledgment of a present indebtedness, payable with interest from date one year after the death of the maker. It was said in *Cover* v. *Stem, supra*, that "no precise form of words is necessary to create a bond or obligation. Therefore any memorandum in writing under seal, whereby a *debt* is acknowledged to be owing, will obligate the party to pay, for it is said that any words which prove a man to be a *debtor*, if they be under seal, will charge him with the

payment of the money." Again it is said in that case that "there must be terms employed to create a *debitum in præsenti*, though the *solvendum* may be in *futuro*, and even after the death of the obligor. It would seem to be clear that the relation of debtor and creditor must be created and subsist in the life-time of the parties to the instrument, though the time of payment may be deferred until after the death of one of the parties." This instrument was under seal, used the term "due" and the obligor further said "*I bind my executor to pay* the same out of my estate as aforesaid." Taking that in connection with the other provisions there can be no doubt about the intention of the maker to become a *debtor* to the appellee, but with the understanding that the debt was not to be paid until after his death. The fact that it was not payable until after the death of the maker does not invalidate it, as is clear from what we have quoted above from *Cover* v. *Stem*. A number of cases that hold that notes payable at or after death are valid are collected in 4 *Ency. of Law* (2nd ed.), 92, note 2.

The statements that "said sum of money is due and owing by my said son, Ezra D. Feeser, to the said David H. Feeser," and that it was "to be deducted of the distributive share coming to my said son, Ezra D. Feeser out of my estate," did not in any way relieve the obligor from the indebtedness. The object of inserting that provision is perfectly manifest. His intention doubtless was to charge his son, Ezra, with the amount so to be paid David H. Feeser, and when the executor paid it he would be entitled to the bill obligatory, which would on its face show the intention of the maker that his son, Ezra, should be so charged with it. Whether or not that can be done need not be considered by us, as it is not before us, but the insertion of such a provision cannot relieve his estate from the payment of the debt. We are of the opinion that the instrument is a valid obligation, binding on the estate of William J. Feeser, and the judgment will therefore be affirmed.

*Judgment affirmed, costs to be paid by the appellant out of the estate.*

(Decided November 22nd, 1901.)