# STEPHEN A. DUCKWORTH *ve.* ZEPHANIAH G. DUCKWORTH ET AL.

*Bill for Partition Treated Under an Agreement as a Creditor's Bill— Competency of Witness—Exception to Testimony in Equity—Decla- ration of Indebtedness—Sufficiency of Evidence. to Establish Right to Compensation for Services Rendered by a Son in Cultivating His Father's Farm.*

To a bill by heirs for a sale of real estate and division of the proceeds one of the defendants answered consenting to a sale but setting up a claim against the estate of the deceased owner for services rendered. It was agreed that this claim should be passed upon by the Auditor in the distribution of the proceeds and that the deceased left no personal estate from which the claim could be paid. *Held,* that under this agree- ment the Court had jurisdiction to determine the validity of the claim.

The Act of 1902, ch. 495, re-enacted Code, Art. 35, sec. 2, relating to the competency of witnesses and omitted the provision which had pre- viously rendered an original party to a contract an incompetent witness when the other party was dead. *Held,* that when testimony was taken in a cause after the passage of this Act, an original party to a contract, the other party being dead, was a competent witness.

When the testimony taken in rebuttal in an equity cause was partly testi- mony proper in rebuttal only an exception to the same must indicate the parts which are inadmissible, and if general to all the testimony will be overruled,

The declaration of a party that he would pay whatever he owed to an- other does not establish a subsisting indebtedness, but the correctness of the claim must be shown by other evidence.

A claim for compensation for services rendered to his father made by a son after the former's death must be established by clear proof of an agreement by the father to pay for the services and the terms of the agreement.

Some years after the death of the owner of a farm his son made a claim for services rendered to his father in working on the farm. His evi- dence was that according to the agreement with his father he cultivated the farm for two years for a stipulated money compensation which was not paid and that afterwards for eight years he worked the farm for a share of the crops; that he retained his own share of such crops and turned over to the father his share. During the latter period he alleged that he also did extra work but made no demand upon his father for the money claimed to be due and made no attempt to deduct the same

from his father's share of the crops. After leaving the farm he made no demand for payment and first set up his claim when a bill was filed for a sale of the farm and partition of the proceeds among the heirs. There was some testimony that the deceased had declared in general terms that his son would be paid for his labor. *Held*, that the evidence in the case fails to establish either an express or implied obligation on the part of the deceased to pay the amount claimed and is insufficient to rebut the presumption arising from the conduct of the parties and the lapse of time that neither party recognized the existence of an indebtedness.

Appeal from the Circuit Court for Garrett County (WILLIAMS, J.)

The cause was argued before McSHERRY, C. J., FOWLER, BRISCOE, PAGE, BOYD, PEARCE and SCHMUCKER, JJ.

*Albert A. Doub* and *Taylor Morrison* for the appellant.

*Thomas J. Peddicord* (with whom was *F. A. Thayer* on the brief), for the appellees.

PEARCE, J., delivered the opinion of the Court.

The principal question in this case is one which has been frequently before the Courts, and as to which the general rule is well established, but it is constantly recurring under varying circumstances claimed to take it out of the general rule. Whether the present case falls within the rule or within the exception is the subject of our inquiry.

This case originated in a bill filed April 21st, 1900, by the appellees against the appellant to obtain a decree for the sale of the real estate of their father, Hiram Duckworth, and the division of the proceeds among them. The appellant answered consenting to the decree, but setting up a claim of $900 against his father's estate for services rendered in his father's lifetime, which claim it was agreed, was to be presented to the auditor, and to be passed on by him in the distribution of the proceeds, upon such testimony as should be then produced, all irregularities in the mode of procedure being waived by the parties, and it being also admitted that

the father left no personal estate from which said claim could have been realized.

A decree for sale was passed, a portion of the real estate was sold thereunder for a sum sufficient to discharge this claim, and thereupon the appellant filed a petition alleging the facts and praying that the auditor might be directed to take such testimony in reference to the claim as the parties should produce, and it was so ordered.

The Judge of the Circuit Court, in the opinion there delivered, suggested a doubt as to the validity of such order for a want of jurisdiction, but while the mode of procedure is unusual, we think the effect of the agreement of the parties was to convert the proceedings to that extent into a creditor's bill, and that there was no want of jurisdiction to pass the order. The bill averred there was no other claim against the estate, and if at any time before distribution of all the proceeds of sale, any other creditors should intervene, they could be equalized with the appellant, if his claim were allowed.

The appellant was employed in 1881 at the Lochiel Mills in Garrett County. At that time his brother, Zephaniah Duckworth, was tilling his father's farm for one-third of the crops, but in July, 1881, became dissatisfied with his contract, and abandoned it, and the appellant left his employment at the mills, and took his brother's place on the farm, where he remained until April, 1891. Hiram Duckworth died in 1899.

On April 3rd, 1902, Stephen Duckworth filed with the auditor a claim against Hiram Duckworth, sworn to before a Justice of the Peace, as follows :

"For services rendered from July, 1881, to April, 1891................. $666 21
By Credit.................................................................................... 65 15
                                                         601 06
Interest from April, 1891, to Mch. 1, 1902...................................... 390 00
                                                       $991 06

In support of this claim he produced Philip Klipstein, Truman Warnick, Jonas Weitzell, Wesley Broadwater, and Garrett Coleman.

Philip Klipstein, a brother-in-law of Hiram Duckworth, tes-

tified that Stephen Duckworth worked on his father's farm and that in the same year in which the father died, he heard him say to witness' wife: "Stephen Duckworth need not be uneasy, he shall be paid, if I don't pay it myself, I will leave enough to pay him." When asked what debt the father was speaking of, he replied, "I don't know. It was a debt I suppose he knew he owed him, or thought he did. I don't know anything about the conditions he worked on."

Truman Warnick, a brother-in-law of Stephen Duckworth, testified that he knew Stephen worked on his father's farm for six years, and thought he worked four years longer, and that he did general farm work, but he knew nothing of their agreement; that the services he saw rendered were worth $12.00 a month and board, and that he had on three different occasions heard Hiram Duckworth say Stephen should be well paid for his labor, and that the last time he said so was shortly before his second marriage in 1896.

Jonas Weitzel, who lived on the adjoining farm, testified that he knew Stephen worked on his father's farm from 1885 to 1891, and that he heard Hiram Duckworth say about two years before he died, that Stephen was the best boy he had raised and he should be paid for his work. On cross-examination he said that he knew one year Stephen was farming the land on shares and got one-third of the crops, which he saw divided, but he could not say what year that was.

Wesley Broadwater, who also lived on the adjoining farm, testified that Stephen worked on the farm a long time, eight or ten years anyhow, between 1880 and 1890, along there, but that he knew nothing of their agreement, or of any division of the crops.

Garrett Coleman, who was frequently at the farm testified that he knew Stephen worked there a number of years, and that Hiram Duckworth frequently told him Steve was the best son he had, and he should be paid for his work.

This was the case made by the appellant who was not offered as a witness in chief. Zephaniah Duckworth for the appellees, testified that he agreed with his father to till the

farm in 1881 for one-third of the crops; that he farmed it under that agreement till harvest time in 1881, when he could not get along well with his father, and Stephen was sent for to take the farm off his hands at the same terms he was farming it on, one-third of the crops; that he heard his father and Stephen talking over the matter, and that Stephen was to have one-third of the crops; that Stephen always told him he was farming for the one-third; that he had helped to thresh the crops and grain; that the grain was always divided, Stephen's one-third being put into one granary, and two-thirds in his father's separate granary; that he had seen the potatoes dug and measured and they were divided in the same way; that Stephen had no property when he went on the farm in 1881, but had a "good bit of property" when he left there in 1891; that he never heard Stephen say a word about any claim against his father, though they talked together about setting aside conveyances of land made by their father to his second wife; he also testified that his father had often said to him when he wanted him to help with a busy piece of work, "that they would all be well paid, and that there would be plenty to pay us all after he was gone."

John Blocker testified that in 1889 or 1890, Stephen Duckworth employed him to thresh wheat for him.

Hampton Butler testified that he went to live on the farm in 1889, and that year the crops were divided, one-third to Stephen, and two-thirds to his father, but that the last two years Stephen got two-thirds, and told him there was more in it for him to find the seed and get two-thirds, than for his father to find the seed and get two-thirds. He also said he got his information as to the terms of the farming both from Stephen and his father. John Stark, a son-in-law of Hiram Duckworth, testified that he had known Stephen for twenty years and knew he farmed his father's land for one-third of the crops; that he knew the crops were divided and kept separately in the granary, and Stephen fed part of his share to his own stock and sold part, that he had himself bought some from Stephen.

Mrs. Groves, a sister of Stephen, testified that she lived with her father all the time that Stephen was on the farm, and had heard Stephen talk with her father about the dividing of the crops, and knew they were divided and kept separately, that she never heard of any claim of Stephen's against his father until this case was brought.

Ashford Warnick testified that he lived on the adjoining farm, and that Stephen told him more than once he was working the farm on the thirds; that he helped Stephen thresh and Stephen either paid him or helped him thresh back.

Lincoln Wilt testified he had always known Stephen Duckworth, and that Stephen told him, both while on the farm, and after leaving it, that he farmed it on the shares. He also said Stephen said he had a claim for other work on the farm, but the witness did not say when the work was done, or the amount of the claim, or when the statement was made by Stephen.

This closed the appellee's case whereupon Stephen Duckworth, his wife, Ida Duckworth, and John W. Sibert were called in rebuttal. The wife testified that she was there the last six years, and that Stephen "farmed some few fields on shares," but not all the farm; that he " mowed his father's grass, hauled his wood and grain, fed his stock and went to market for him; that all this was extra work and that his father told her at different times Stephen should keep his time and should be paid for it." Stephen testified that in 1881 soon after he went there he was going to leave and his father told him if he would stay he would give him 75 cents per day and board, and one dollar per day in harvest. That he labored 2 years and 2 months and the rest of the time only tilled a few fields on shares, doing extra work for his father which he described in the same words used by his wife. He testified that the only memorandum he had of his account was the type-written account filed with the auditor and prepared by Mr. Morrison, one of his counsel, and that "the books on which he kept the account were nearly all torn up or worn out, but he supposed they were down home there."

Sibert testified that Stephen did general farm work for his father besides farming on shares, and that a year before the father's death he heard him say Stephen was to be paid for this work.

Objection was made to Stephen's competency as a witness, which was sustained by the Court below, but this testimony was taken August 25th, 1902, after ch. 495 of 1902 went into effect, which repealed and re-enacted sec. 2 of Art. 35 of the Code, and omitted the disqualification of an original party to a contract or cause of action when the other party is dead, and under the provisions of the Act of 1902 we are of opinion he was a competent witness. It was also objected that all the testimony of these three witnesses was in chief and not in rebuttal. Much, we think, was properly evidence in chief, but so much as went to show that Stephen was not tilling the whole farm on shares, but only a part, and that he did work for his father, not required by his tillage of part of the farm we think was properly admitted in rebuttal; and the objection being general to all the testimony of these witnesses, and not indicating the parts which are objectionable, it cannot prevail. *Freeny* v. *Freeny*, 80 Md. 406.

But treating this testimony as in, we cannot perceive that it aids the claim. Upon the testimony of the appellees Stephen was a tenant of the whole farm during the whole period he resided there, and upon his own statement, he was a tenant of part of the farm during all except the first two years and two months. It would appear from his testimony that he meant to be understood as saying that he did not till any part of the farm on shares during the first two years and two months, and that he labored during that whole period for seventy-five cents a day and board. But if this be conceded there were still eight consecutive years during which he was paying his father rent for such parts of the farm as he tilled on shares, during the whole of which period he could have deducted from the rent due his father the amount due him by his father for services rendered him. In view of his own meagre resources and the ample means of his father, it would have been

natural and proper for him to demand a settlement and payment each year, yet year after year he divided the crops without any deduction for his claim, and without presenting any claim, or even stating to his father that he had a claim. This continuous and unbroken course of conduct creates an almost irresistible presumption that neither party recognized the existence either of any express contract for payment or of any implied obligation to make payment. Not even when he left the farm in 1891, nor when his father contracted a second marriage in 1896, nor at any time during his father's life, does it appear either from his own testimony, or that of any other witnesses, that he made known to his father that he had a claim and no member or connection of the family ever knew he had a claim until the bill in this case was filed to sell the real estate of his father. Under such circumstances the claim cannot be allowed without clear and satisfactory proof from disinterested sources. The cases of *Bantz* v. *Bantz*, 52 Md. 693, and *Bixler* v. *Sellman*, 77 Md. 494, stand squarely in the way of its allowance, and we can discover nothing in the case of *Hardy* v. *Hardy*, 74 Md. 9, which would justify a different conclusion, that being as said by the learned Judge of the lower Court, "a clear example of the clear and satisfactory proof uniformly demanded in order to uphold this class of claims."

The effect of the declarations of Hiram Duckworth that Stephen Duckworth should be paid for his work remains to be considered. If there were proof that Hiram Duckworth had been presented with this account in his life time, or had definite knowledge otherwise of the character and extent of the services covered by the account now presented, his general declarations might be regarded perhaps as referring to that account, or to the services claimed for, there being no evidence in the case of any other services rendered, but before such effect can be given to those declarations, the correctness of the claim must be otherwise proved according to the requirements of the law. *Shipley* v. *Shilling*, 66 Md. 563. This has not been done. The claim is for a lump sum of

$666.21 for the whole ten years, and there is not a word either in the account as sworn to or in the testimony, tending to show how that sum was reached. Stephen testified that Mr. Morrison made out the account, but did not state from what *data* it was made out, and Mr. Morrison was not called as a witness. Stephen could not tell what the amount charged against his father was upon the books which he said had been nearly torn up or worn out, and could only say "it ran about $900." He testified that he did the extra work claimed for, the whole time he was on the farm, and at the same time said he worked the first two years for 75 cents a day and board. Yet his account for extra work includes these two years, when his time certainly belonged to his father. While testifying that he never had the whole farm on shares, and after the first two years only tilled a few fields on shares, he makes no attempt to state how many fields there were on the farm, or how many of these, or what proportion of the land he had on shares; or what part of the plowing, mowing, threshing, hauling, or marketing of the crops, was done in connection with the land he tilled on shares, and what part in connection with the residue of the farm. It is impossible from such testimony to ascertain with any degree of accuracy what was extra work, and equally impossible therefore to determine to what extra work the father's declarations are to be referred. To sustain a claim based upon such vague and unsatisfactory testimony would be to offer mischievous encouragement to future unfounded claims of like character which has been so strongly disapproved in *Bixler* v. *Sellman*, *supra*. In view of the conclusion we have reached it is unnecessary to consider the question of limitations which was argued by counsel.

Finding no error in the decree of the Court, it will be affirmed.

*Decree affirmed with costs above and below.*

(Decided December 4th, 1903.)