# JAMES W. PEARRE, EXECUTOR, *vs.* ISABELLA SMITH.

*Services Rendered by One Member of a Family for Others Presumed to Be Gratuitous—What Constitutes a Family— Instruction Too Indefinite.*

When services are rendered by one member of a family for another, they are presumed, on account of the relation between the parties, to have been gratuitous. To entitle one to claim compensation for such services, there must have been a design at the time of their rendition to charge for the same, and an expectation on the part of the recipient to pay for them.

In order to be a member of a family in this sense, it is not necessary that there be any blood relationship between the parties. Those who live together under the same roof in the way in which families ordinarily live, each taking part in the domestic work, are to be regarded as members of a family.

Plaintiff, a woman who had been taken as a child into a household from a charitable institution, lived for many years on the footing of a member of the family, with three women and their brother; all of them taking part in the domestic work of the household and the brother furnishing part of the supplies. Plaintiff never demanded any compensation for her services, although she received gifts of money from time to time from the other members of the household. After the death of the brother, she brought this action against his executor, to recover compensation for the services so rendered. *Held*, that since the plaintiff was a member of the family her services are presumed to have been gratuitous, and there is no evidence of any agreement or understanding, express or implied, to pay for them, and that the defendant's deceased was not the head of the family so as to render him liable as such for its maintenance.

A prayer instructing the jury, that "on the evidence and pleadings in this case their verdict must be for the defendant," is too general and indefinite.

*Decided May 20th, 1909.*

Appeal from the Circuit Court for Howard County (Forsythe, J.).

The cause was argued before Boyd, C. J., Briscoe, Schmucker, Thomas, Worthington and Henry, JJ.

*Redmond C. Stewart* and *Carlyle Barton* (with whom was *Aubrey Pearre, Jr.,* on the brief), for the appellant.

*Jno. G. Rogers,* for the appellee.

SCHMUCKER, J., delivered the opinion of the Court.

The appeal in this case is from a judgment of the Circuit Court for Howard County in favor of the appellee against the appellant as executor of the estate of George R. Leach. The suit was brought on the common counts in assumpsit to recover the value of services alleged to have been rendered to the defendant's testator and his family in his lifetime. The defense was made under the general issue pleas. The trial resulted in a judgment for $800 in favor of the plaintiff, from which the appeal was taken.

It appears from the evidence on behalf of the plaintiff—the defendant offered none—that the services sued for consisted of aiding the testator's sisters, during more than twenty years prior to his death, in the performance of current domestic labor in the household composed of him and them. The evidence does not tend to show that the services were rendered in pursuance of an express or implied contract, or that there was a design at the time of their rendition to charge for them or an expectation on the part of the recipients to pay for them, or that any claim for payment was asserted, or demand therefor made upon the testator during his lifetime. The evidence on the contrary shows that the services in question were voluntarily and cheerfully rendered by the appellee, who was an inmate of the household without being required to pay either board or lodging. It further shows that when she was, on several occasions, presented with sums of money by different members of the family in the absence of a demand therefor on her part, she accepted them without, so far as the record shows, suggesting the existence in her favor of a right to compensation. We have definitely determined in a series of cases that services performed under such circumstances by a member of the family are not sufficient to support a claim against a decedent's estate for compensation. *Bantz* v. *Bantz,* 52 Md. 686; *Bixler* v. *Sellman,* 77 Md. 496, *Gill* v. *Staylor,* 93 Md. 453; *Duckworth* v. *Duckworth,* 98 Md. 100.

In 2 *Page on Contracts,* page 1183, sec. 778 (citing *Bixler v. Sellman, supra*), it is said: "Persons who live together as members of the same family and render personal services each to the other generally do so from motives of affection and not because of the expectation of a financial reward therefor. Accordingly, the mere rendition of personal services between persons so situated, does not establish a liability on the part of the person receiving such services to make compensation to the person rendering them, even though the services may be performed at the express request of the person receiving the benefit thereof, or may be voluntarily accepted by him."

In our view although the appellee was not a blood relation of the decedent and his sister, she should, upon the undisputed evidence in the case be regarded as having been a member of his family. The word "family" is often used in a restricted sense to describe a group of persons connected by ties of kindred, such as parents and children, but it has a variety of meanings according to the connection in which it is used, and it should be so construed in each case as to give it the significance appropriate to its use. 19 *Cyc.* 450; 12 *A. & E. Encycl.,* 866; *Sheehy* v. *Scott,* 4 L. R. A. N. S. 365; *Downes* v. *Long,* 79 Md. 385. Webster defines it to be a collective body of persons who live in one house and under one manager, and that meaning has been approved in many cases cited in the foot note found on page 866 of Vol. 12 *A. & E. Encycl.; supra.* *Bouvier's Law Dictionary,* Vol. 1, page 758, says that in common parlance the family "consists of those who live under the same roof with the *pater familias*" and also cites different cases as authority for the definition of the word family taken by us from Webster. The words "family" and "household" are often interchangeably used.

It appears from the evidence that the appellee was taken about the year 1869, when but eight years old, by Mr. Leach's widowed sister Mrs. Belt, as a ward, from the Children's Aid Society and was admitted into her family and educated and taught the trade of dress making by her. The

relation thus established between the appellee and Mrs. Belt continued until the death of the latter about seven years ago. About twenty years ago Mrs. Belt, taking the appellee with her, moved from the farm, which she had theretofore occupied, to Lisbon in Howard County, where she and her unmarried sisters Martha and Louisa and her brother Mr. Leach, who was a bachelor, resided together as one family in a house in which he then conducted a store. Five years thereafter Mrs. Belt built a residence at Lisbon and she and her two sisters and her brother, who then retired from business, moved into her house and lived together there as one family until they, with the exception of Louisa Leach successively died. During all of these years until the death of Mrs. Belt about seven years ago the appellee remained with the family thus constituted and performed the services in question by participating with Mr. Leach's sisters in the discharge of the current domestic duties of the household. Louisa Leach, the testator's surviving sister, and Albert Hobbs, an intimate friend of the family throughout its entire history, both testified for the appellee as plaintiff that she was always treated as a member of the family while she resided with them. According to Louisa Leach's testimony the appellee did such of the domestic work as she chose to, just as any member of the family. After Mrs. Belt's death the appellee did not reside permanently with the family but paid them visits of some length from time to time during which she assisted as she had formerly done in the performance of household duties and nursing such of them as were ill. The services thus rendered by the appellee in the long series of years covered by them were doubtless considerable and there was evidence tending to show that they were valuable and that Mr. Leach the testator in his lifetime said to several other persons that the appellee had been very faithful and that her services had not been properly recognized by his sister Mrs. Belt and declared his purpose to make the matter right, but, so far as the record shows, he never made any provision for the appellee. There is however no evidence tending to show that the services were

rendered under such circumstances as to fairly imply an understanding that a charge was to be made for them and met by payment, which we held in *Bantz* v. *Bantz, supra,* to be necessary to support such an action as the present one.

The evidence also shows that practically all of the appellee's services were rendered, not to the appellant's testator, Mr. Leach, but to his sisters, and mainly during the life of Mrs. Belt. That fact was conceded at the hearing of the appeal, but was met with the contention that Mr. Leach was the head of the family consisting of himself and his sisters, and as such was responsible for the ordinary and necessary expenses incident to the maintenance of that family. We cannot yield our assent to that contention. Without pausing to inquire what are the liabilities of the "head of a family," we must say that in our opinion the evidence in the case does not tend to prove that Mr. Leach was the responsible head of the family of which he was a member. He was under no legal obligation to support his adult sisters, and there is no evidence that he, in fact defrayed the expeness of their maintenance. The family resided in the house of his sister, Mrs. Belt. His sister Louisa testified that he furnished coal, wood, bread, meat and butter, and that she got the groceries and sugar and sometimes the bread, and attended to everything inside, and that she was the head of the family after Mrs. Belt got in bad health. The evidence shows that Mrs. Belt was a person of property, and the just inference is that she also contributed in her lifetime to the support of the family. In view of these circumstances and the further fact that the evidence shows Mr. Leach to have been in very moderate circumstances, the record must be regarded as presenting no legally sufficient evidence that he was in fact the responsible head of the family. It rather tends to prove that no one member of the family stood in that relation to the others.

The record contains six bills of exceptions, two of which relate to the Court's action on the prayers and the others to the admission of evidence objected to by the defendant.

It will not be necessary for us to notice the exceptions relating to the admissibility of evidence, because, even with the aid of the testimony objected to, the appellee, as plaintiff, for the reasons already stated by us, failed to present evidence legally sufficient to entitle her to recover.

At the close of the plaintiff's case below the defendant asked the Court by her first prayer to instruct the jury "that on the evidence and pleadings in this case their verdict must be for the defendant," but the Court rejected the prayer. There was no error in rejecting that prayer, as it was in a form which we have several times held to be too general and indefinite. *Robey* v. *State,* 94 Md. 67; *Westn. Md. R. R.* v. *Carter,* 59 Md. 311; *Hobbs* v. *Batory,* 86 Md. 71-2. The Court would have been justified in granting a prayer in proper form instructing the jury that there was no evidence legally sufficient to entitle the plaintiff to recover under the pleadings in the case.

There was reversible error in granting the plaintiff's second prayer, which submitted generally to the jury the question whether the appellee was a member of the testator's family, and instructed them, if they found that she was not such, and had rendered useful and valuable services to him and for his benefit in his lifetime, the fact of their rendition was *prima facie* evidence of their acceptance by him and, in the absence of proof to the contrary of any express contract, raised an obligation to pay what they were reasonably worth. This prayer was specially excepted to for want of evidence legally sufficent to show that any services were rendered to Mr. Leach or that he had any family. The only evidence we find in the record tending to show that the plaintiff rendered any services to Mr. Leach personally is the statement made by the witness Hobbs, that she waited on Mr. Leach during his last illness "just the same as one of the family," but he also said he did not know how long she was present in his last illness.

The prayer under consideration is a substantial copy of the plaintiff's second prayer, which was approved by us in *Gill* v. *Staylor, supra,* in which the facts were materially different

from those now before us. In that case the services rendered to the intestate consisted, not of such work about a household as is ordinarily done by its inmates, but in carrying on a butchering business for the testatrix, and it was there testified by many witnesses and practically conceded that the services had been both rendered and received, with a contemporaneous expectation of being paid for. Furthermore, the doctrine that no promise to pay will be implied for services and accepted where the service is rendered by a member of the family of the decedent, was expressly recognized and approved in *Gill* v. *Staylor.*

There was also reversible error in rejecting the defendant's second prayer, which instructed the jury that the undisputed evidence showed that the plaintiff lived with the defendant's testator as a member of the family, and that as it failed to show a design on the plaintiff's part at the time of the rendition of the services to charge for the same or an expectation on the part of the testator to pay for them, their verdict must be for the defendant.

It being apparent that the case must be reversed for the errors we have pointed out, it is unnecessary to review the rulings upon the other prayers. The judgment appealed from will be reversed, and, as the appellee has not made out a case entitling her to recover, no new trial will be granted.

*Judgment reversed, with costs, without a new trial.*