## LAURA J. HARPER *vs.* HENRY DAVIS, Adminis- trator of Franklin H. Harper.

*Exceptions; when erroneous rulings no ground for reversal.*
*Decedent's estate; claims for services; members of family*
*or household; legacies in settlement of debts; priority.*
*Promissory notes; presumption; consideration;*
*questions always open; moral obligations;*
*note payable at death of maker.*
*Legacies; abatement.*

Where it is a question of proving a dividend upon a note allowed in the account of the administrator, a copy of the account, and not the testimony of the administrator, is the best evidence.                                p. 351

Rulings of the lower Court upon exceptions do not present grounds for reversal when they cause no injury to the exceptant.                                                p. 351

When services are rendered by a member of the family, a presumption of law arises that they are gratuitous, and the burden is on the claimant to show that there was an express or implied understanding between the parties that the services were to be charged and paid for.                        p. 353

When such relation does not exist between the parties, the law implies a promise to pay for services rendered and accepted, and the burden is on the party resisting the payment to show that no charge was to be made.                        p. 353

One entering a household as a member of the family, and performing household services as such, without there being at the time any intention of payment, can not recover therefor.                                                p. 353

A promissory note imports a consideration, and in a suit on such a note its production makes out a *prima facie* case. But the defendant may prove a want of consideration, and if that is established, no recovery can be had.                p. 357

The validity of any parole contract, whether verbal or written, depends on the fact of a sufficient legal consideration.

p. 357

A moral obligation is not a sufficient legal foundation for a suit.                                                                    p. 357

The mere fact that a note is payable at the grantee's death can not defeat recovery upon it.                                  p. 357

A general legacy given in satisfaction of a subsisting debt due by a testator to a legatee is, in the event of an insufficiency of assets, entitled to a preference over other legacies; but when the legacy is for services that were rendered gratuitously, and with no legal obligation for the testator to pay for them, this principle does not apply, although the services were in the highest degree meritorious.                       p. 358

*Decided April 4th, 1911.*

Appeal from the Circuit Court for Kent County (PEARCE, C. J., ADKINS and HOPPER, JJ.).

The cause was argued before BOYD, C. J., BRISCOE, THOMAS, PATTISON and URNER, JJ.

*Frank Gosnell* (with whom was *Hope H. Barroll* on the brief), for the appellant.

*William W. Beck* and *Lewin W. Wickes,* for the appellee.

BOYD, C. J., delivered the opinion of the Court.

The cause of action sued on in this case was a promissory note given by Franklin H. Harper to the appellant, and the defense was want of consideration. The appellant was, at the time it was given, Miss Laura J. Webb, but she married Mr. Harper in October, 1904, and he died June 10, 1907. The note is as follows:

"STILL POND,, March    , 1904.

"I promise to pay to the order of Laura J. Webb three thousand dollars, without interest, after my death. Value received."

She lived at Franklin H. Harper's from 1882 until the fall of 1903, when the first Mrs. Harper died. She then lived for several months at the house of Joseph W. Harper, who was a son of Franklin H., and died in December, 1903, leaving a widow and three minor children—the latter being the only heirs of Franklin H. Harper. This suit is being defended at the instance of their mother.

There are five bills of exception in the record, and, although the one called the first includes the prayers, the other exceptions were taken during the trial. We do not understand the fourth and fifth to be pressed by the appellant. The ruling in the second need not be discussed, for if it is admissible to prove the amount of the dividend on this note, which was allowed in the account of the administrator, a copy of that account, and not the testimony of the administrator, was the best evidence. The question in the third bill of exceptions, which was excluded by the Court was: "What was the position Miss Webb occupied in the household during the time she was there, before Mrs. Harper's death?" As the witness had been permitted to state what Miss Webb did when she was there—especially as she had said that sometimes she would not be at the Harper house more than once or twice a year, and she had moved away from the neighborhood about twenty-five years before she testified—the appellant has no reason to complain of the ruling in that exception. Having thus briefly referred to those exceptions, we will now consider the rulings on the prayers, which present the important questions for our consideration.

The defendant's second · prayer, which was granted, instructed the jury that "the undisputed evidence in this case shows that there was no valid consideration for the note sued on in this case, and the verdict must be for the defendant". The defendant's third was also granted, and was as follows: "The Court instructs the jury that the undisputed evidence in this case shows that the plaintiff lived with the family of the defendant's intestate, Franklin H. Harper, as a member of the family, and that the evidence in this case failed

to show a design on the plaintiff's part at the time of the
rendition of the services testified to, to charge for same and
an expectation on the part of Franklin H. Harper to pay
for the same, and the undisputed evidence in the case further
shows that the consideration for the note sued on was the
services rendered by the plaintiff to the defendant's intestate
as testified to, and the verdict must be for the defendant."
The plaintiff filed a special exception to the granting of the
third prayer, alleging that there was no evidence that the
plaintiff did not expect to charge for the services rendered,
and there was no evidence that there was no design on the
part of the defendant's intestate to pay for said services.

It is admitted that the plaintiff was not related to Mr.
Harper, and the evidence abundantly shows that during the
twenty-one years she lived at his house, in the life-time of
the first Mrs. Harper, she performed many valuable services
—especially during the latter part of the first Mrs. Harper's
life, as she was an invalid and not only could not do as much
herself as she formerly did, but was in such condition as to
require a great deal of nursing and care by the appellant.
The theory of the appellee is that, although the appellant
was not a blood relation, she was treated as a member of the
family, and when the services were rendered there was no
intention on her part to charge, or on that of Mr. Harper to
pay for them, and that hence she cannot recover.    There
have been a number of decisions by this Court involving the
general principles applicable to cases of this character, but
this case presents some other questions.

The rule announced in *Bantz* v. *Bantz,* 52 Md. 693, that
"in order to justify a claim for services being allowed against
a decedent, there must have been a design, at the time of ren-
dition, to charge, and an expectation on the part of the reci-
pient to pay for the services", etc., has been declared by
this Court in several cases to apply only when such claim is
made "by a member of the family of the decedent".    *Bixler*
v. *Sellman,* 77 Md. 496; *Wallace* v. *Schaub,* 81 Md. 598;
*Gill* v. *Staylor,* 93 Md. 472.    The foundation for the rule

being that when services are rendered by a member of the family, a presumption of law arises that they were gratuitous, and hence the burden is on the claimant to relieve himself of that presumption, by showing that there was "an express or implied understanding between the parties that a charge for the services was to be made, and to be met by payment." On the other hand, when no such relation exists between the parties as to bring the claimant within that rule, the law implies a promise to pay for services rendered and accepted, and the burden is on the party resisting the payment to show that no charge was to be made, if the rendition and acceptance of the services are proven. The question has, therefore, frequently arisen as to who is "a member of the family" within the rule, and the decisions in the different jurisdictions have not been wholly harmonious, as will be seen by reference to the note to *Hodge* v. *Hodge,* in 11 L. R. A. N. S. 873. In this State we have had some cases in which it was held that the claimants were not "members of the family" within the rule, although they lived in the same house. In *Wallace* v. *Schaub, supra,* the decedent had boarded with the plaintiff for many years at a fixed price per week for board and lodging, but in a suit for services as a nurse she was allowed to recover, and it was said the decedent was not a member of the plaintiff's family. In *Gill* v. *Staylor, supra,* it was held that the nephew of the decedent's husband was not a member of her family so as to raise the presumption that services rendered by him for her were intended to be gratuitous, although he received his board from the decedent, but no money for about thirteen years.

But in *Pearre* v. *Smith,* 110 Md. 531, this Court, through JUDGE SCHMUCKER, held that although the plaintiff was not a blood relation of the decedent, she was a member of the family within the rule, and that a prayer should have been granted which asked the Court to instruct the jury "that the undisputed evidence showed that the plaintiff lived with the defendant's testator as a member of the family, and that as it failed to show a design on the plaintiff's part at the time

of the rendition of the services to charge for the same, or an expectation on the part of the testator to pay for them, their verdict must be for the defendant". It is true that in that case the Court also held that the testator was not the responsible head of the family and the services were rendered to his sister and not the testator, but the other defense was distinctly raised and passed on by the Court. The case of *Gill* v. *Staylor* was distinguished, and JUDGE SCHMUCKER said: "In that case the services rendered to the intestate consisted, not of such work about a household as is ordinarily done by its inmates, but in carrying on a butchering business for the testatrix, and it was there testified by many witnesses and practically conceded that the services had been both rendered and received, with a contemporaneous expectation of being paid for. Furthermore, the doctrine that no promise to pay will be implied for services (rendered) and accepted, where the service is rendered by a member of the family of the decedent, was expressly recognized and approved in *Gill* v. *Staylor*". In *Wallace* v. *Schaub* the conditions were also very different from what they were in *Pearre* v. *Smith,* as there the decedent simply boarded with the plaintiff, and the reason for the rule between members of the family was not applicable, as there could be no presumption that such services as were the basis of that suit were gratuitous merely because the decedent boarded with the plaintiff.

In the note to *Hodge* v. *Hodge,* 11 L. R. A. N. S. 847, it is said: "Even in cases where the person who rendered and the person who received the services in question were not related by either blood or marriage, the implication of a promise to pay compensation will, as a general rule, be negatived, if it appears that, at the time when the services were rendered, there existed between them a domestic relationship the incidents of which were essentially similar to those which are ordinarily associated with such a relationship when it exists between kinsfolk." A number of cases are cited in that note, and the general principle established in this State by *Pearre* v. *Smith* seems to be recognized in many other

jurisdictions. It may be said that in most of the cases so cited those seeking compensation for services had entered the families as children, but while in *Pearre* v. *Smith* the claimant was only eight years of age when she was taken, as a ward, from the Children's Aid Society, and was admitted into the family, educated and taught the trade of dressmaking, the principle announced was not made to depend in any way upon that, but was based on the fact that she was a member of the family. It may be that when a young child enters a household, and is treated and brought up as one of the family, it would be more difficult to establish a claim against the estate of the head of the family for services rendered, but the principle is the same, if an adult becomes a member of the family and renders services under such circumstances as are presumed to be gratuitous.

In this case it is not shown what the age of the appellant was when she first went to the home of Mr. Harper, but judging from the work she did, she was evidently not a young child, and we will assume that to be so. The evidence shows, however, that she became a member of the family in the sense in which that term is used in the authorities we have referred to. She testified as follows: "Q. How did you come to go to live there, Mrs. Harper? A. Mrs. Harper was very lonely and had no daughter and kept begging me until I went to live with her * * * Q. Then you continued to live at Mrs. Harper's house up until the time of her death? A. Yes, sir. Q. She asked you to come there as a daughter? A. Yes. Q. You lived there as a daughter? A. Yes. Q. Mrs. Harper was very fond of you and you of Mrs. Harper? A. Yes, sir. Q. You lived there just like any other member of the family would? A. Yes. Q. You had all the privileges any member of the family had, didn't you? A. Yes." There is not a suggestion in the record that she ever intended to make a charge for her services, or that there was any promise, express or implied, at the time of the rendition of the services that she would be paid. It was not until after the death of Mrs. Harper that the note sued on was given. The

testimony of the plaintiff as to the note was as follows: "Q.
Mrs. Harper, what was the consideration for this note? A.
He wanted to secure me in case he didn't get to make a will.
Q. Secure you for what? A. In consideration of the services
I had always rendered there in the family. Q. And was
this note given for that purpose? A. Yes, sir." On cross-
examination by her counsel (she having been called by the
defendant) she said: "Q. Mrs. Harper, you said Mr. Harper
said to you at that time why he was induced then to give the
note? A. Just as I answered. He gave it to me to secure
me in case he didn't get to make a will. Q. You don't prob-
ably understand. I want to know how that conversation came
up with reference to his first wife. I don't want to lead you.
I am cross-examining you. I know what you said to me.
What did he say to you with reference to his first wife and
what she had intended. A. He said she always intended to
provide for me at her death, and what she wanted after the
debts were all paid (they were very much involved) she
wanted them to give it to me in money to do what I wanted
with it. Q. To give you what in money? A. The amount
of the provision they were going to make for me." Then
after showing by her the character of services rendered she
was asked: "Q. Was anything said to you by Mr. Harper
about paying for it? A. No; except that $3,000, that was
all. He never mentioned it before. He said it was for con-
sideration for the services I had done * * * Q. Who was
passing through the room when he gave it to you? A. As
he was passing out Mrs. Lavinia Harper came through the
sitting room where I was sitting. I held it up and said,
'look here, see what Mr. Harper gave me.' She said, 'Oh,
isn't that nice.' "

Her own testimony, therefore, conclusively shows that
there was no understanding when they were rendered that
she was to be paid for her services, and it was not until long
after they had been rendered that the note was given, and
then it was given "in case he didn't get to make a will."
Moreover, it was the first Mrs. Harper who always intended

to provide for her at her death. It would seem to be clear then that under the authorities the appellant could not recover for the services rendered, if she was simply suing for compensation for such services, and it only remains to determine whether she can recover on the note, which was given under the circumstances we have stated.

It will be conceded that this note imported a consideration, and the plaintiff made out a *prima facie* case by its production in evidence, but it must also be admitted that the defendant had the legal right to prove want of consideration for it, and, if that be established, that no recovery could be had. From what we have already said it can be seen that in our judgment the evidence conclusively shows that the services rendered were gratuitous, and as there was no other attempted to be shown, there was no consideration upon which the promise to pay can be sustained. As the appellant did undoubtedly render the first Mrs. Harper faithful services it is to be regretted that she or the decedent did not make provision for her by will, or in some way which could be sustained, but in our judgment recovery can not be allowed in this case without violating principles of law which are firmly established.

The fact that the note was payable after the maker's death would not of itself defeat recovery. *Feeser* v. *Feeser,* 93 Md. 716; *Junkins* v. *Sullivan,* 110 Md. 539. But the validity of every parol contract, whether verbal or written, depends on the fact of a sufficient legal consideration, and that of a promissory note in the hands of the payee is always open to inquiry. *Sumwalt* v. *Ridgely,* 20 Md. 107; and a mere moral obligation simply would not be a sufficient legal foundation for the promise." *Ingersoll* v. *Martin,* 58 Md. 67; *Linz* v. *Schuck,* 106 Md. 220; *Lyell* v. *Walbach,* 113 Md. 574. In *De Grange* v. *De Grange,* 96 Md. 609, it was held, quoting from the syllabus, that "A promissory note executed and delivered by the maker to the payee as a voluntary gift can not be enforced against the estate of the maker after his death, because such a note is a mere promise, without con-

sideration, to make a gift." The statement in that opinion that there was evidence tending to show that the appellant from time to time rendered to the intestate such services as one brother might be expected to perform for another, but that the evidence did not connect the giving of the notes with those services, or show that they formed a consideration for the notes, merely referred to a fact in the case, and the Court did not say or intimate that, under such circumstances as we have here, services by a member of a family to another would be a sufficient consideration in the absence of a promise or understanding when the services were rendered. Although this Court and its predecessors have fully recognized the doctrine that a general legacy given in satisfaction of a subsisting debt due by a testator to a legatee is, in the event of an insufficiency of assets, entitled to preference in payment over other general legacies, we have also held that when a legacy is given in compensation for services rendered by the legatee gratuitously, there being no legal obligation on the testator to pay for them, the legacy is not entitled to priority, although the services were in the highest degree meritorious. *Buchanan* v. *Pue,* 6 Gill, 112; *Matthews* v. *Targarona,* 104 Md. 442.

The appellant cited *Hamilton* v. *Thirston,* 93 Md. 213, to show that an action will lie where there is a promise to will property in consideration of services rendered to the promissor, but in that case there was evidence tending to prove that the intestate agreed with the appellee that if he would stay with him and do for him whatever services he requested for the remainder of his life, he would at his death give him a portion of his estate equal to that of any of his children. There was also evidence that the appellee entered into the agreement and rendered services to his uncle during the remainder of the latter's life—although the appellee was not permitted to recover on that promise by reason of the statute of frauds. That was a wholly different case from this.

Amongst authorities in other jurisdictions which support the doctrine that a promise to pay for past services rendered

by one member of a family to another or a note given for such consideration cannot be enforced are *Laing* v. *Dietz,* 191, Ill. 161 N. E. 841; *Shugart* v. *Shugart,* 111 Tenn. 179, 76 S. W. 821; *Goldsby* v. *Roberts,* 1 Blackf. 247; *Allen* v. *Bryson,* 67 Iowa, 591, 25 N. W. 820; *Stoneburger* v. *Motley,* 95 Va. 784; *Blanshan* v. *Russell,* 52 N. Y. Sup. 963, affirmed in 161 N. Y. 629, 7 Cyc. 711.

So without further discussion of the question, we are of the opinion that the Court properly granted the two prayers of the defendant, and it is unnecessary to refer to those of the plaintiff which were rejected.

　　　　　　　　*Judgment affirmed, the appellant to pay the costs.*